202 P.3d 1064 (2009)
2009 WY 34
In the Matter of the Worker's Compensation Claim of David Block.
David BLOCK, Appellant (Petitioner),
v.
STATE of Wyoming ex rel. WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).
No. S-07-0283.
Supreme Court of Wyoming.
March 10, 2009.
*1065 Representing Appellant: James R. Salisbury and Sean C. Chambers of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Senior Assistant Attorney General.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.
GOLDEN, Justice.
[¶ 1] David Block suffered a work injury found to be compensable by the Workers' Compensation Division. A little more than two years after his injury, he applied for permanent partial disability (PPD) benefits. By statute, Block would be eligible for PPD benefits if, because of his work-related injury, there were no jobs available for him in Wyoming that paid at least ninety-five percent (95%) of his prior wage.[1] A labor market survey indicated there were no jobs available fulfilling the statutory requirements for Block in Wyoming. After receiving the labor market survey, the Division approached Block's employer at the time of his injury. At the Division's encouragement, the employer stated it would offer to rehire Block to his prior position with appropriate accommodations. Based on this assurance, and before the employer formally offered Block his old job, the Division denied Block's application for PPD benefits.
[¶ 2] Block declined the job offer he eventually received from his former employer. Block contested the denial of his application for PPD benefits and lost after a contested case hearing. The district court affirmed the denial. We reverse.

ISSUES
[¶ 3] Block presents four issues for our review:
A. Whether the Hearing Officer committed an error of law in its application of Wyoming Statute § 27-14-405 in denying permanent partial disability benefits to Appellant.

*1066 B. Whether the Order entered by the Hearing Officer on April 27, 2007, is supported by substantial evidence.
C. Whether the Order entered by the Hearing Officer on April 27, 2007, is arbitrary and capricious and contrary to Wyoming law.
D. Whether the Order entered by the Hearing Officer on April 27, 2007, is contrary to public policy.

FACTS
[¶ 4] In February 2002, Block worked for Tennyson-Ankeny Construction as a carpenter's helper and general laborer, earning $12.00 an hour. His job duties included cleaning the construction site of debris and snow, tearing down and removing temporary structures, and helping other workers as needed. Block testified he regularly carried two-by-fours, metal beams, doors and other heavy construction materials around the job site.
[¶ 5] While at work on February 19, 2002, Block injured his back and neck moving a heavy beam. The injury was reported to the Division, and Block received medical benefits and temporary total disability (TTD) benefits. Ultimately, Block was assigned a seven percent whole body permanent partial impairment (PPI) rating.
[¶ 6] In May of 2004, Block applied for PPD benefits. Block underwent a Functional Capacity Evaluation and a Vocational Evaluation. The Functional Capacity Evaluation related that Block was limited to medium duty work. Along with the Vocational Evaluation was a labor market survey. The survey stated there were no jobs in Wyoming, within Block's physical and vocational limitations, that paid an hourly wage equal to or greater than 95% of Block's wage at the time of injury ($12.00).
[¶ 7] On October 14 or 15, 2004, after receiving the evaluations, a Division claims analyst, Maribeth Bazal, contacted Tennyson-Ankeny. Bazal spoke with Barbara Ankeny. Mrs. Ankeny is the wife of Jay Ankeny (a co-owner of Tennyson-Ankeny Construction), and the office manager for the company. During her deposition, Mrs. Ankeny testified she did not remember the specifics of her conversation with Bazal. In general, she knew Bazal was inquiring whether the company would be willing to rehire Block. She remembered Bazal mentioning the percentage of 95% but was not completely sure of its significance. During the course of conversation, Mrs. Ankeny came to the conclusion that, when Bazal was referring to the 95%, she was referring both to Block's physical capacity to do his prior job and the wage the company should offer Block.
[¶ 8] Mrs. Ankeny remembered there was some discussion of Block's work restrictions, but she did not remember the details. She only remembered she did not consider the restrictions mentioned by Bazal to be serious enough to concern her about Block's ability to perform his old job. The conversation with Bazal left her with "the assumption [Block] had the ability to do whatever he had done before." Based on the information provided by Bazal, the company agreed to rehire Block to his former position at 95% of his former salary. Bazal immediately wrote a letter denying Block's application for PPD benefits. In the letter she stated: "On October 15, 2004 I contacted your employer and determined that they [sic] are willing to accommodate your restrictions at a comparable wage."[2]
[¶ 9] Block, who had moved to his home state of South Carolina, received the letter from the Division informing him of the denial of his PPD. Block had yet to receive the offer from Tennyson-Ankeny so he telephoned Bazal to enquire as to what was happening. Bazal told him he would be getting a letter from Tennyson-Ankeny within a few days. She did not have any information on the accommodations that would be made to comply with his work restrictions. Block then called Mrs. Ankeny. She also did not give any specifics as to the accommodations the *1067 company was willing to make for his work restrictions.
[¶ 10] The letter offer was mailed to Block on October 19, 2004. The pertinent language in the letter Block ultimately received from Tennyson-Ankeny stated:
I would like to offer to you your previous position in our company, as a laborer/carpenter helper, effective immediately, at a comparable wage (95%) (in 2002 you were earning $12.00/hour). Your tasks and wage would be determined by your restrictions, (based on the Wyoming Workers' Compensation information for your case), which I am willing to accommodate in your position.
Block did not respond to the letter offer. Instead, he objected to the denial of PPD benefits. The denial was referred for a contested case hearing. By order dated June 9, 2005, the hearing officer agreed with the Division's decision to deny PPD benefits. Block appealed to the district court. The district court initially remanded the case to the hearing officer for supplemental findings. The hearing officer entered a supplemental order on April 27, 2007. The district court affirmed the April order.

DISCUSSION
[¶ 11] The scope of our review of administrative agency decisions is dictated by Wyo. Stat. Ann. § 16-3-114(c)(ii) (LexisNexis 2007), which requires us to:
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
As we are governed by the same review standards, we give no deference to the district court's order affirming the hearing officer. In this case, because the hearing officer decided Block failed to adequately prove his case, we review the entire record to determine if the decision is against the overwhelming weight of the evidence. Horn-Dalton v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2009 WY 14, ¶ 7, 200 P.3d 810, 813 (Wyo.2009); Dale v. S & S Builders, LLC, 2008 WY 84, ¶¶ 21-26, 188 P.3d 554, 561-62 (Wyo.2008).
[¶ 12] An injured worker has the burden to prove each of the elements of his claim by a preponderance of the evidence. Phillips v. TIC-The Industrial Co. of Wyoming, Inc., 2005 WY 40, ¶ 25, 109 P.3d 520, 531 (Wyo.2005); Abeyta v. State ex. rel. Wyo. Workers' Safety and Comp. Div., 2004 WY 50, ¶ 5, 88 P.3d 1072, 1075 (Wyo.2004); Johnson v. Wyo. Workers' Safety & Comp. Div., 2001 WY 48, ¶ 7, 23 P.3d 32, 35 (Wyo.2001). Since Wyo. Stat. Ann. § 27-14-102(a)(xv) (LexisNexis 2007) defines "permanent partial disability" as "the economic loss to an injured employee ... resulting from a permanent physical impairment," in order to be eligible for PPD benefits, a claimant must demonstrate he has suffered a loss of earning capacity due to a work-related injury. Bonsell v. State ex rel. Wyoming Workers' Safety and Comp. Div., 2006 WY 114, ¶ 10, 142 P.3d 686, 689 (Wyo.2006).
[¶ 13] According to Wyo. Stat. Ann. § 27-14-405,
(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:
(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;
(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later *1068 than one (1) year following the later date; and
(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.
The only question in the instant appeal is whether Block could find employment in Wyoming at a wage that was at least ninety-five percent (95%) of his pre-injury wage.
[¶ 14] Block presented a labor market survey from a professional familiar with Block's situation and the job market in Wyoming. The survey stated that Block, because of his work-related injury, would not be able to find a job in the general economy that paid 95% of his pre-injury wage. This is enough to constitute a prima facie case for entitlement. The Division has attempted to rebut this survey with the assertion that one job meeting the statutory requirements did existthe position offered to Block by his former employer.
[¶ 15] Before we need address the issues of law raised by Block, the initial question that logically presents is whether the Division's rebuttal allegation that one appropriate, bona fide job offer existed is supported by substantial evidence. The hearing officer stated he believed the deposition testimony of Mrs. Ankeny and therefore concluded the job offer from Tennyson-Ankeny was a sincere offer. He found Tennyson-Ankeny intended to provide employment to Block with necessary accommodations and an appropriate wage.
[¶ 16] There are several problems with finding the job offer from Tennyson-Ankeny was a bona fide offer. First, the record clearly discloses the offer was based on misinformation. During her deposition, Mrs. Ankeny, although she admittedly had no personal knowledge of the job duties of a laborer/carpenter's assistant, repeatedly referred to Block's prior position as involving only light duty, such as sweeping floors. From her vaguely remembered conversation with Bazal she knew Block had some work restrictions, but nothing that seemed of importance to her. In the end, she assumed Block could perform 95% of the job duties of his prior position and only minor accommodations would be necessary.
[¶ 17] However, Mrs. Ankeny testified she had no access to Block's worker's compensation file. She therefore did not know about Block's 7% whole body impairment rating. She also had not seen the Functional Capacity Evaluation limiting Block to medium duty work. Indeed, the letter offer makes clear the fact that Tennyson-Ankeny had no immediate knowledge of Block's work restrictions.
[¶ 18] Block, who introduced the only evidence of the actual work requirements of his former position, testified the position regularly involved activity that exceeded his current physical ability. He believed more than minor accommodations would be necessary for him to be able to perform his prior job. Yet it is to that specific job that Tennyson-Ankeny extended its employment offer to Block. Given the lack of concrete information and the mistaken assumptions underlying Tennyson-Ankeny's offer, the offer can at best be considered contingent. It would be sheer speculation to assume Tennyson-Ankeny would have maintained its offer to Block once it learned Block's true functional capacity.
[¶ 19] This leads to the other main problem with the job offer from Tennyson-Ankeny. The company's lack of knowledge regarding Block's functional capacity is unmistakable in the written offer and necessarily creates ambiguity. The only certain term is the job title. Block's tasks and exact wage were to be determined based on information not currently in the company's possession. The company stated it was willing to accommodate Block's work restrictions, but no indication was given as to the nature or extent of those accommodations. In short, the written offer was devoid of information necessary for a reasonable person to be able to seriously consider the offer. Block cannot be faulted for not accepting such an illusory offer.

CONCLUSION
[¶ 20] Block introduced a labor survey of available jobs based on his true functional *1069 capacity. The results of the survey evidence Block's eligibility for PPD benefits. The Division's rebuttal that one job exists that allegedly would defeat Block's entitlement to benefits is against the overwhelming weight of the evidence.
[¶ 21] The order of the district court affirming the denial of Block's PPD benefits is reversed. The case is remanded for the district court to order the Division to award Block appropriate PPD benefits.
NOTES
[1] Wyo. Stat. Ann. § 27-14-405 (LexisNexis 2007), in pertinent part, reads:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:
(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury[.]
[2] The ambiguity in the date of the conversation between Bazal and Mrs. Ankeny stems from the denial letter being dated October 14, 2004.