2011 WY 45

Sandra **MAHAFFEY**, as Personal Representative of the Estate of Donald Dial, Appellant (Respondent),

v.

**STATE** of Wyoming ex rel. **WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION**, Appellee (Petitioner).

No. S–09–0091.

Supreme Court of Wyoming.

March 11, 2011.

Representing Appellant: Donna D. Domonkos, Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General.

Before KITE, C.J.*, and GOLDEN, HILL, VOIGT **, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1]   After suffering a compensable work injury, Donald Dial applied for permanent partial disability (PPD) benefits in accordance with the Wyoming Workers' Safety and Compensation Act. The Workers' Compensation Division (Division) denied the application and Mr. Dial requested a hearing. Following the hearing, the Office of Administrative Hearing's (OAH) awarded him benefits, and the Division appealed the award to the district court. The district court reversed the OAH decision, and Mr. Dial appealed to this Court. After the appeal was filed, Mr. Dial passed away and Sandra Mahaffey, the personal representative of his estate, was substituted as the party of record. Finding that substantial evidence supported the OAH decision, we reverse the district court order.

## ISSUES

[¶ 2]   The issues for our determination are whether the OAH's decision was supported by substantial evidence or whether the OAH abused its discretion or acted arbitrarily, capriciously or not in accordance with the law when it awarded benefits.

## FACTS

[¶ 3]   On June 10, 2004, Mr. Dial was working as a counter sales person for Howard Supply Company in Casper, Wyoming. While assisting a customer, he picked up a 290 pound reel of wire rope and suffered a neck injury. He consulted his doctor and began conservative treatment for the injury, consisting of medication, physical therapy and injections. His condition did not improve and, on March 15, 2005, Dr. Thomas Kopitnik performed a two level anterior cervical discectomy and fusion to repair the injury.

[¶ 4]   On September 27, 2005, Mr. Ken Rodeman, a physical therapist, performed a functional capacity evaluation of Mr. Dial to determine whether he could return to his employment at Howard Supply Company. Based upon the evaluation, Mr. Rodeman assigned Mr. Dial a 25% permanent partial impairment rating. He also advised that Mr. Dial could not return to the heavy physical work required of him at his job as a counter salesman, but could return to medium physical work.

[¶ 5]   On September 29, 2005, Dr. Tuenis D. Zondag performed an independent medical evaluation of Mr. Dial. Dr. Zondag reported that Mr. Dial would be at maximum medical improvement by October 28, 2005, and would have "disability to extend his head and disability to do repetitive work above his shoulder." Dr. Zondag rated Mr. Dial at 26% whole person impairment and concluded he would be able to work within a medium work capacity.

[¶ 6]   Based upon the functional capacity and independent medical evaluations, the Division awarded Mr. Dial a permanent partial impairment benefit of $18,574.33 on November 2, 2005. A year later, on November 29, 2006, Mr. Dial submitted an application for a PPD award. The Division arranged for him to meet with Ms. Kelly White, a vocational expert, to evaluate whether he could return to employment at a wage that was at least 95% of his monthly gross earnings at the time he was injured. In her initial report, she identified no jobs at 95% or above of his pre-injury salary. She did not include jobs that required driving because Mr. Dial had stated he was frightened of driving and worried he might cause an accident due to the limited range of motion in his neck.

[¶ 7]   After Ms. White's initial report, the Division obtained an affidavit from Dr. Zondag in which he attested that Mr. Dial's work-related medical condition was not preventing him from driving. As a result, Ms. White amended her evaluation to include jobs involving driving. Three of the jobs identified paid 95% of Mr. Dial's pre-injury earnings. On the basis of Ms. White's report, the Division denied Mr. Dial's application for a PPD award, stating that "the information indicates

* Reassigned on November 23, 2010.

** Chief Justice at time of expedited conference.

that you can return to an occupation at a comparable wage."

[¶ 8] Upon Mr. Dial's request the OAH convened a hearing on October 31, 2007. The focus of the hearing was whether Mr. Dial could return to work making at least 95% of his gross pre-injury earnings. Mr. Dial presented evidence that he was not able to drive due to his injury and could not, therefore, perform the jobs Ms. White had identified. The Division attempted to show that Mr. Dial's inability to drive was not due to his injury but was instead because he had been stopped in 2006 for driving under the influence, had pled guilty to reckless driving, and his driver's license had not been reinstated. On November 30, 2007, the OAH issued an order awarding PPD benefits, concluding from the evidence presented that as a result of his injury Mr. Dial was unable to obtain employment at a comparable wage.

[¶ 9] The Division filed a petition for judicial review in the district court. The Division asserted the OAH's findings, conclusions and order were inadequate and substantial evidence showed Mr. Dial could have returned to work earning a wage comparable to what he was making before his injury. On March 18, 2009, the district court issued an order reversing the OAH's order. The district court concluded Mr. Dial "failed to establish, by a preponderance of [the] evidence, that he was incapable of finding employment in Wyoming at a wage that was at least 95% of the pre-injury wage." Mr. Dial timely appealed from the district court's order.

## STANDARD OF REVIEW

[¶ 10] In considering an appeal from a district court's review of an administrative agency's decision, we give no special deference to the district court's decision. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo.2008). Instead, we review the case as if it had come directly to us from the administrative agency. *Id.* Our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009), which states:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 11] We review an agency's factual findings for substantial evidence. *Dale,* ¶ 10, 188 P.3d at 558. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moss v. State ex rel. Wyo. Workers' Safety and Comp. Div.,* 2010 WY 66, ¶ 10, 232 P.3d 1, 4 (Wyo.2010). Findings of fact are supported by substantial evidence if, from the evidence preserved in the record, we can discern a rational premise for those findings. *Id.*

[¶ 12] We review an agency's conclusions of law *de novo,* and will affirm an agency's legal conclusion only if it is in accordance with the law. *Dale,* ¶ 26, 188 P.3d at 561–62.

## DISCUSSION

[¶ 13] "Permanent partial disability" is defined as "the economic loss to an injured employee ... resulting from a permanent physical impairment[.]" Wyo. Stat.

Ann. § 27–14–102(a)(xv) (LexisNexis 2009). In order to be eligible for PPD benefits, a claimant must demonstrate he has suffered a loss of earning capacity due to a work-related injury. *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 10, 142 P.3d 686, 689 (Wyo.2006) (citations omitted). An injured worker has the burden to prove each of the elements of his claim by a preponderance of the evidence. *Id.*

[¶ 14] Wyo. Stat. Ann. § 27–14–405(h) (LexisNexis 2009) incorporates the "loss of earnings" concept into the statutory requirements for PPD benefits:

> (h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

> (i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;

> (ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

> (iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

There was no dispute that Mr. Dial timely filed his application for PPD benefits and actively sought work as required by subsections (h)(ii) and (iii). The only issue was whether he proved he was unable to return to work at a job paying at least 95% of what he was earning before the work injury as required in subsection (h)(i).

[¶ 15] Ms. Mahaffey asserts the OAH's determination that Mr. Dial met his burden of proving that he was unable to obtain employment at a comparable wage was supported by substantial evidence and the district court erred in reversing that determination. She contends substantial evidence was presented showing that Mr. Dial was unable to drive due to his injury; the only available jobs paying a comparable wage identified by the vocational evaluator required driving; therefore, he was unable to return to work at a wage comparable to his pre-injury earnings. The Division asserts the district court correctly concluded Mr. Dial failed to prove that he was unable to return to work at a comparable wage. It points to evidence that two jobs were available, both of which paid more than his pre-injury wage. The Division asserts Mr. Dial's inability to drive resulted not from his work-related condition but from the suspension of his driver's license as a consequence of his arrest for driving while intoxicated.

[¶ 16] In determining whether an employee has suffered a loss of earning capacity both medical and non-medical evidence may be relevant. *Bonsell,* ¶ 12, 142 P.3d at 689. The following considerations are relevant to the loss of earning capacity inquiry: "the employee's physical impairment, including the nature and extent of his injury; age; education; actual earnings, including pre-injury and post-injury earnings; ability to continue pre-injury employment; and post-injury employment prospects." *Id.* No one factor is determinative and the agency, as the fact finder, has the discretion to assign such weight to the individual factors as it deems appropriate. *Id.*

[¶ 17] In concluding Mr. Dial had suffered a loss of earning capacity and was entitled to an award of PPD benefits, the OAH cited the testimony of Ms. Mahaffey, Mr. Dial's fiancée at the time, that Mr. Dial had limited range of motion, difficulty turning his head and poor concentration and she did not think it was safe for him to drive. The OAH also cited Mr. Dial's testimony that he was released to return to work but was unable to return to jobs that he knew, and had worked in the past in the oil field, as a landscaper and as a truck driver, but no longer felt comfortable driving because of his slow range of motion. Additionally, the OAH referenced Mr. Rodeman's testimony that he had concerns about whether Mr. Dial could safely perform the identified available jobs.

[¶ 18] It is clear from the OAH's conclusions of law that it considered the relevant

factors, including Mr. Dial's physical impairment, age, education, actual earnings and post-injury employment prospects. The OAH placed particular emphasis on this Court's statement in *Bonsell*, ¶ 25, 142 P.3d at 692, that the focus of § 27–14–405(h) is "on the injured worker's true ability to earn a living." The OAH found Mr. Dial to be a credible witness after having the opportunity to observe him and weigh his testimony, an opportunity neither the district court nor this Court had. From all of the evidence, and "plac[ing] its primary focus ... on Mr. Dial's true ability to earn a living after sustaining a significant, on-the-job injury to his neck and left shoulder which resulted in a two level fusion," the OAH concluded he was unable to obtain employment at a comparable wage and was entitled to PPD benefits.

[¶ 19] The Division claims Mr. Dial's application for benefits should have been denied because the evidence showed jobs were available at a comparable wage. The jobs the Division references—as a county assessor and as a Schwann's delivery truck driver—both required driving on a regular basis. The Division contends the affidavit of Dr. Zondag showed Mr. Dial's medical condition did not prevent him from driving; rather, the only factor preventing him from doing so was that he had lost his driver's license as a result of his arrest for DUI.

[¶ 20] In considering the evidence, the OAH gave greater weight to the testimony of Mr. Dial and Ms. Mahaffey than it did to Dr. Zondag's affidavit or Ms. White's testimony. Determining the weight to be assigned to the evidence is the responsibility of the finder of fact. *Bonsell*, ¶ 24, 142 P.3d at 692. Although the evidence in this case may be subject to different interpretations, substantial evidence was presented to support the OAH's determination that Mr. Dial was not able to drive on a regular basis because of his injury.

[¶ 21] In addition to Mr. Dial's and Ms. Mahaffey's testimony at the hearing, the OAH had before it the statements Mr. Dial made to Ms. White during the vocational evaluation to the effect that he was afraid to drive because the stiffness and slow range of motion in his neck potentially would cause him to run into someone or something and Ms. Mahaffey was willing to drive him to work. These statements, made in late 2006 or early 2007, were consistent with his testimony at the hearing in October of 2007. The Division asserts Mr. Dial's inability to drive was due not to his injury but to his arrest for DUI and the suspension of his license. Evidence was presented that in 2006, a year after the surgery in 2005, Mr. Dial was arrested for DUI, convicted of reckless driving, his license was suspended and it had not been reinstated at the time of the hearing. The OAH was required to weigh this evidence against the evidence indicating Mr. Dial could not drive because of his injury. Giving the evidence the weight to which it deemed it was entitled, the OAH apparently believed Mr. Dial's testimony. In light of Mr. Dial's testimony, and that of Ms. Mahaffey, we are not willing to conclude there was no rational premise for the OAH's finding. This is especially true given other evidence in the record corroborating Mr. Dial's testimony and credibility.

[¶ 22] Mr. Rodeman's report confirmed that Mr. Dial's coordination and timing were slow. Mr. Rodeman also concluded that Mr. Dial's subjective reports of pain and associated disability were reasonable and reliable and that he put forth maximum physical effort during the testing even though he was in the unusual position of being sent for a functional capacity evaluation only six months post-operative. While Mr. Rodeman indicated in his 2005 report that Mr. Dial could drive occasionally, the available jobs identified by Ms. White required extensive driving on a daily basis. Mr. Rodeman also expressed disagreement with some of the conclusions reached by Dr. Zondag and Ms. White. Having considered the record as a whole, the OAH's determination that Mr. Dial met his burden of proving that he was entitled to PPD benefits is supported by substantial evidence and is not, in any other fashion, arbitrary, capricious or contrary to law.

### CONCLUSION

[¶ 23] The district court improperly substituted its judgment for the fact finder's

when it reversed the OAH decision awarding Mr. Dial benefits. The OAH decision was supported by substantial evidence and was not otherwise arbitrary, capricious or contrary to law. Consequently, we reverse and remand to the district court with directions the case be returned to the OAH for reinstatement of the order awarding benefits to Mr. Dial.

KITE, C.J., delivers the opinion of the Court; GOLDEN, J., files a dissenting opinion.

GOLDEN, Justice, dissenting.

[¶ 24]   In this appeal, Donald Dial (Dial) challenged the district court's reversal of the Office of Administrative Hearings (OAH) order awarding him permanent partial disability (PPD) benefits pursuant to Wyo. Stat. Ann. § 27–14–405(h) (LexisNexis 2009). After reviewing the OAH order in light of the entire record, I conclude the OAH order awarding PPD benefits was insufficient to permit judicial review. *State ex rel. Wyoming Workers' Safety & Comp. Div. v. Madeley,* 2006 WY 63, ¶¶ 9–10, 134 P.3d 281, 284–85 (Wyo.2006); *Olivas v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2006 WY 29, ¶¶ 15–18, 130 P.3d 476, 484–86 (Wyo.2006). I would therefore reverse the district court's order and remand with directions to vacate the OAH order awarding benefits. I would direct the district court to remand the case to OAH for supplemental findings of fact and conclusions of law.

## ISSUES

[¶ 25]   In Mahaffey's principal brief, she presents these issues:

I.   Whether the Office of Administrative Hearing's decision awarding benefits was supported by substantial evidence.

II.   Whether the Office of Administrative Hearings abused its discretion, acted arbitrarily, capriciously or otherwise not in accordance with law when it reversed the Division's denial of permanent partial disability benefits.

The Wyoming Workers' Safety and Compensation Division (Division) responds with these issues:

I.   Was the hearing officer's decision granting permanent partial disability benefits to appellant—who failed to prove that he was unable to return to employment at a wage comparable to his wage at the time of his injury—supported by substantial evidence?

II.   Was the hearing officer's decision granting permanent partial disability benefits to appellant—who failed to prove that he was unable to return to employment at a wage comparable to his wage at the time of his injury—arbitrary, capricious, or otherwise not in accordance with the law?

In her reply brief, Mahaffey stated this issue:

Whether the Office of Administrative Hearing's decision awarding benefits is complete and supported by substantial evidence.

## BACKGROUND FACTS

[¶ 26]   On June 10, 2004, Mr. Dial, a counter salesman for Howard Supply Company in Casper, Wyoming, suffered a neck injury while helping a customer pick up a 290 pound reel of wire rope. Following the injury, Mr. Dial received physical therapy, and when he did not improve, he discussed his condition with Dr. Thomas Kopitnik and elected surgery. On March 15, 2005, Dr. Kopitnik performed a two level anterior cervical discectomy and fusion to repair the neck injury. On September 27, 2005, Mr. Ken Rodeman, a physical therapist, performed a functional capacity evaluation of Mr. Dial to determine whether he could return to his employment at Howard Supply Company. Based upon that evaluation, Mr. Rodeman reported that Mr. Dial could not return to the heavy physical work required of a counter salesman, but could return to medium physical work. On September 29, 2005, Dr. Tuenis D. Zondag performed an independent medical evaluation of Mr. Dial and reported that he would be at maximum medical improvement by October 28, 2005; he would have disability to extend his head and to do repetitive work above his shoulder; he was rated at 26% whole person impairment; and he would be able to work within a medium work capacity.

[¶ 27] Based upon Mr. Rodeman's functional capacity evaluation and Dr. Zondag's medical evaluation, the Division awarded Mr. Dial a permanent partial impairment benefit of $18,574.33 on November 2, 2005. A year later, on November 29, 2006, Mr. Dial submitted to the Division his application for a PPD award. Sometime in December 2006, Mr. Dial met with Ms. Kelly White, a vocational counselor and evaluator whom the Division had employed to interview Mr. Dial, perform labor market surveys, and evaluate whether Mr. Dial could return to employment at a wage that was at least 95% of the monthly gross earning that Mr. Dial was earning when he suffered his neck injury. On January 8, 2007, the Division received Ms. White's vocational evaluation report. On January 17, 2007, the Division issued its final determination that Mr. Dial was not eligible for a PPD award, stating that "the information indicates that you can return to an occupation at a comparable wage. Wyoming Statute § 27–14–405(h)(i)." This determination was apparently based upon the above-mentioned reports of Mr. Rodeman, Dr. Zondag, and Ms. White. Ms. White's report included labor market surveys and an addendum showing several jobs as a field appraiser in county assessors offices in Cheyenne, Casper, Rock Springs, and Sheridan, and a job as a sales route driver for Schwan's in Billings, Montana.

[¶ 28] On January 29, 2007, Mr. Dial requested a hearing on the Division's final determination. On October 31, 2007, an OAH hearing examiner conducted a contested case hearing. Mr. Dial, as the claimant, had the burden of proof. *Block v. State ex rel. Wyoming Workers' Safety & Comp. Div.*, 2009 WY 34, ¶ 12, 202 P.3d 1064, 1067 (Wyo.2009). Testifying in person on Mr. Dial's behalf were Mr. Dial, Mr. Dial's finance Sandra Mahaffey, and Mr. Rodeman. Testifying by deposition on the Division's behalf were Dr. Zondag and Ms. White. The Division also submitted an affidavit executed by Dr. Zondag. Both Mr. Dial and the Division submitted documentary evidence. The contested case hearing transcript runs 123 pages and the transmitted record on appeal contains 471 pages.

[¶ 29] On November 30, 2007, the OAH hearing examiner issued her order awarding PPD benefits to Mr. Dial. In that order, the hearing examiner's findings of fact that are pertinent to the main issues of the hearing were as follows:

8. Susan Mahaffey (Mahaffey) testified that she is the fiancée of Dial. Mahaffey testified that she has known Dial for about four and [one] half years. Mahaffey testified that Dial was active[ly] involved in sports, hunting, fishing and performed mechanical activities prior to his work injury. Mahaffey testified that Dial was a working thriving adult. Mahaffey testified that she was not aware that Dial had any physical impairment prior to June 10, 2004. Mahaffey testified that Dial enjoyed being outdoors a lot. Mahaffey testified that on June 10, 2004, Dial came home from work at Howard, she noticed his neck and back were red and swollen. Mahaffey testified that as the weekend went on Dial got progressively worse. Mahaffey testified that on Monday, he could not go into work. Mahaffey testified that Dial could not walk. Mahaffey testified that she went to Howard and got an injury report which she filled out. Mahaffey testified that Dial signed the report. Mahaffey testified that Dial did not get better [and] his condition continued to deteriorate. Mahaffey testified that the therapy was sometimes making Dial's condition worse. Mahaffey testified that Dial's primary doctor referred them to Dr. Kopitnik. Mahaffey testified that on March 15, 2005, Dial had double neck fusion. Mahaffey testified that after the operation for the next day or so Dial felt pretty positive. Mahaffey testified that Dial got an infection and took antibiotic[s] for weeks. Mahaffey testified that Dial started therapy and has never recovered. Mahaffey testified that Dr. Kopitnik finally told Dial to stop the therapy and allow himself time to heal. Mahaffey testified that Dial's condition has gotten worse. Mahaffey testified that Dial still had headaches and spasms in his mid-back. Mahaffey testified that when Dial is under emotional stress his neck swells. Mahaffey testified that Dial has low concentration. Mahaffey testified that she does not think

Dial is safe enough to drive because of his range of motion. Mahaffey testified that Dial has lost the drive for thriving.

9. Mahaffey testified that Dial has not had a drivers' license since he had his surgery. Mahaffey testified that Dial does not have a Colorado drivers' license. Mahaffey testified that they have lived in the state of Colorado since January 2007. Mahaffey testified that Dial has stopped drinking. Mahaffey testified that the amount of beer that Dial drank depended upon his pain.

10. Ken Rodeman (Rodeman) testified that he is a physical therapist and has practiced for over 20 years. Rodeman testified that he performs functional capacity evaluations for work injuries and ergonomic analysis. Rodeman testified that a functional capacity evaluation can last from six to eight hours. Rodeman testified that he saw Dial at the request of Dr. Zondag on September 27, 2005. Rodeman testified that he performed a functional capacity evaluation. Rodeman testified he was asked to evaluate whether Dial could return to his old job and if not what were his current work tolerances. Rodeman testified that he reviewed the medical notes of Drs. Kopitnik and Zondag. Rodeman testified that the evaluation usually begins at 8 a.m. Rodemen testified the injured worker is asked to fill out a series of questionnaires which requires an extensive amount of sitting time. Rodeman testified that the worker is observed and timed during the filling out of questionnaires. Rodeman testified body posture is observed. Rodeman testified that the questionnaires are not only general questions for his files, but pain questionnaires of the injured worker's perception of their functional capabilities and symptoms. Rodeman testified there is a particular way of grading the questionnaires. Rodemen testified that he takes a history of the injury and medical intervention and when they were released or are still in treatment, as well as, pending surgeries. Rodeman testified that he starts the range of motion testing, muscle strength and grip strength. Rodeman testified that he then proceed[s] to fine dexterity testing, hand manipulation test and various body part positioning. Rodeman testified that toward the end of the testing he actually gets into the lifting capacity of the individual. Rodeman testified that there is also a cardio vascular test. Rodeman testified that Dial performed extremely well on the functional capacity testing. Rodeman testified that Dial did more on the lifting but he downgraded him to the 50 pound lifting safety range. Rodeman testified that Dial changed his body mechanics in the over head lift to perform better. Rodeman testified that Dial['s] lifting capacity from floor to knuckle was 50 pounds on an occasional basis and 23 pounds over head. Rodeman testified that Dial perform[ed] well on all the lifts, however he downgraded Dial because the maximum lifts were deemed to be too much to be safe. Rodeman testified that in reference to his neck, Dial was limited with forward and backward bending, limited side bending right and left, limited with rotation to the right and had normal range of motion on the left. Rodeman testified that Dial's hand grips were within the norm. Rodeman testified that [he] concluded that Dial was able to work in the medium category according [to] the Dictionary of Occupational Title (DOT). Rodeman [testified] that Dial was not able to return to his previous job which was in the heavy category. Rodeman [testified] that Dial had some limitations with overhead work and decreased range of motion.

11. Rodeman testified that he reviewed the vocational evaluation done by Kelly White, as well as, her deposition and the deposition of Dr. Zondag. Rodeman testified that he performed a job analysis of cement truck driver in Casper at two different facilities. Rodeman testified that [he] analyzed the position of cement truck driver at JTL Concrete and Mobile Concrete. Rodeman testified that the job involved more frequency than the DOT reveals. Rodeman testified that the lifting capacity [is] probabl[y] comparable because with the job analysis that he performed the chutes actually weigh 40 to 50 pounds, not 75 pounds as mentioned in the

depositions. Rodeman testified that his job analysis found that there is buildup in the chutes which increases the weight as opposed to the testimony in the depositions of White and Zondag. Rodeman testified that the positioning of the chutes was correlated between the two facilities. Rodeman testified that JTL's chutes are hanging type off the back of the truck which requires an over head lift to brought done [sic] to waist height to added [sic] onto the main chute on the back of the truck. Rodeman testified that the frequency of lifts were six. Rodeman testified that Mobile Concrete had hanging chute[s] up above at seven feet. Rodeman testified that some chutes were placed on the fenders of the truck and strapped down and some attached to the front of the truck toward the cab. Rodeman testified that cement truck drivers are required to pre-maintenance check of the vehicle, and at the batch plant the driver is required to climb up to the top of the cylinder and look inside for the consistency of the cement. Rodeman testified that quite a bit of climbing is involved. Rodeman testified that each driver is required to perform maintenance on the truck which means cleaning inside the cylinder. Rodeman testified if there is concrete inside the cylinder the driver has to use a small electric jack hammer. Rodeman testified that he had trouble with the overhead lifting in reference to Dial, going under the truck and going up [and] down the ladder with one hand. Rodeman testified that each of the driver[s] do about seven loads a day on an average. Rodeman testified that Dial is not capable of performing the job of cement truck driver due to the frequency of lifts, over head lifting and amount of weight with the frequency of lifts. Rodeman testified that White's general description of driver, sales route does not allow him to determine whether it meets Dial's limitation. Exhibit EC–30. Rodeman testified that the county assessor jobs described in EC–28, and EC–29 do not give much of physical capabilities, for him to determine that Dial could perform the job.

12. Rodeman testified on cross-examination that he has not tested Dial since September 27, 2005. Rodeman testified that he did his functional capacity evaluation of Dial six months after the two level cervical fusion. Rodeman testified that in his opinion, a more accurate evaluation of Dial would have been after one year. Rodeman testified that he did not know what Dial['s] ultimate physical capacity was going to be relative to his neck fusion when [he] did his evaluation. Rodeman testified that he did a job analysis of JTL which was shown in White['s] report. Rodeman testified that Dial was an appropriate candidate for [the] work hardening program. Rodeman testified that Dial can lift 10 pounds constantly.

13. Dial testified that he was injured when [he] helped a customer pick up a spool of wire rope. Dial testified that [he] felt a snap from his neck to the middle of his back. Dial testified that he was active prior to his injury. Dial testified that he lifted weights. Dial testified that he played baseball. Dial testified that he played darts and fished. Dial testified that he worked at counter sales at Howard. Dial testified he came home from work on June 10, 2005 and by Monday he was stiff. Dial testified that he was seen by Dr. Clifford. Dial testified that Clifford asked him if [he] wanted to see a specialist. Dial testified that he was referred to Dr. Kopitnik. Dial testified that Kopitnik told him that there were problems with his neck but he did not do surgery right away. Dial testified that therapy did not help him. Dial testified that first physical therapy had some lying on my back [sic]. Dial testified that the second physical therapy did not help. Dial testified that he had surgery and returned to physical therapy which created more problems. Dial testified that his shoulders and neck started bulging. Dial testified that he was told to lay off physical therapy. Dial testified that he did therapy on his own. Dial testified that his neck scares him. Dial testified that his neck and shoulder swells. Dial testified that [he] has numbness in his fingers. Dial testified that his range of motion is slow. Dial testified that he has been given facet injection in his neck. Dial testified that he was released to return to

work. Dial testified that he has been unable to return [to] the jobs he knows. Dial testified that he has done oil field and landscaping. Dial testified that he has driven a truck before. Dial testified that he would not feel comfortable driving truck with his slow range of motion. Dial testified that he was turned down for rental car service job. Dial testified that he does not have a drivers' license.

14. Dr. Zondag performed an Independent Medical Evaluation (IME) on Dial on September 29, 2005. Zondag found that Dial would be at maximum medical improvement by October 28, 2005 and gave Dial a 26 percent impairment of the whole person. Zondag found Dial would be able to work within the medium work capacity. Zondag indicated the Dial would have a disability to extend his head and disability to repetitive work above his shoulder. Exhibit EC–C–10.

15. In a vocational evaluation performed by Kelly White (White) indicated that Dial was paid $2,288.76 per month as shown on the report of injury. White noted there were no jobs identified that had a beginning salary of 95% or above what Dial was earning at the time of his injury. White noted further, in her evaluation that she researched the job of a delivery sales driver but was not used as Dial did not drive. Exhibit EC–H–13. White did addendum to her evaluation with a labor market survey on jobs involving driving. White's addendum listed jobs that paid a beginning salary of 95% or above what Dial was earning at the time of his injury. Exhibit EC–1. White testified on cross-examination in her deposition "I was not told they would have to be lifting bags of cement or anything like that, no. I don't go—I'm not going to go through every single thing with these employers. I'm not going to sit there and say are you going to have them lift this and that and are you going to have them lift that? I ask for a general job description. I also have the Dictionary of Occupational Titles which gives me a job description and so I have something in general that I can go off of." Exhibit EC–S–15.

16. Based upon all the evidence presented, this Office finds Dial has met his burden of proof in this case that he is entitled to PPD benefits. Dial has shown by a preponderance of the evidence that because of his injury and is unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings he was earning at the time of the injury, a wage and is entitled to a loss of earnings award.

[¶ 30] The hearing examiner's conclusions of law pertinent to the pivotal issues of the hearing were the following:

*B. Application of Law*

23. Dial received a PPI award and subsequently timely filed for benefits. The parties do not dispute that Dial timely filed his disability application and that he has actively sought suitable work considering his health, education, training, and experience. The Division denied Dial's application asserting that Dial could return to an occupation at a comparable wage.

24. This case requires consideration of the facts and circumstances surrounding the application for PPD benefits and the efforts made by Dial to comply with the provisions of the act and the rules. Dial testified that he did his best to perform on the functional capacity evaluation done by Ken Rodeman. Rodeman testified that Dial perform[ed] well and in some instances performed above a level that was safe considering his restrictions. Rodeman indicated that Dial could perform jobs in the medium category. Dr. Zondag found that Dial could perform jobs in the medium job category. Kelly White performed an initial vocational evaluation and found that there were no jobs that paid 95% of Dial's pre-injury wage. White submitted addendum which found driving jobs that paid 95% of Dial's pre-injury wage. White testified further that when she did her labor market survey she got a general job description. Rodeman testified that he did a job analysis of the cement truck driver and the frequency of lifting and over head lifting and determined the Dial could not perform this job because of his work injury. Rodeman indicated that he could not determine

if the driver sales was within Dial's restrictions because the job description was too general.

25. This Office places its primary focus in this case on Dial's true ability to earn a living after sustaining a significant, on-the-job injury to his neck and left shoulder which resulted in a two level fusion. Considering all the evidence in this case, including Dial's physical limitations, and the functional capacity evaluation and job analysis support his inability to obtain employment at a comparable wage.

[¶ 31] The Division timely petitioned for judicial review to the district court, and that court on March 18, 2009, issued its order reversing the OAH hearing examiner's order because "substantial evidence did not exist to establish, by a preponderance of the evidence, that Respondent [Dial] could not return to a job at a wage at least 95% of the monthly gross earnings he was making at the time of his injury." The district court explained its decision as follows:

### DISCUSSION

The Division argues that the Hearing Examiner's finding that Respondent carried his burden of proof is stated in a "summary fashion" without making basic findings of fact on the issue. (Appellant's Brief, p. 12.) The Division further argues that "A review of the entire record does not support the OAH decision to award Mr. Dial PPD benefits." (Appellant's Brief, p. 13.) For the reasons set forth below, this Court concludes, after a complete review of the record, that substantial evidence does not exist in the record to support the OAH Decision reversing the Division's denial of Respondent's application for PPD benefits. Specifically, a complete review of the record reveals that substantial evidence did not exist to establish, by a preponderance of the evidence, that Respondent could not return to a job at a wage at least 95% of the monthly gross earnings he was making at the time of his injury.

Under Wyoming law, the burden is on the claimant to demonstrate, by a preponderance of the evidence, that he is "unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury." Wyo. Stat. § 27–14–405(h)(i); see *In the Matter of the Worker's Compensation Claim of David Block,* 2009 WY 34, ¶ 12 [202 P.3d 1064] (Wyo.2009); *Yother v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 173 P.3d 356 (Wyo.2007). Respondent maintains that "There is substantial evidence to support the findings and conclusions of the hearing examiner and the decision should be upheld." (Respondent's Brief, page 9.) The primary issue in this case is whether Respondent could or could not perform the county assessor jobs. If he could, then he was ineligible for PPD benefits. If it was not determinable, then he still was ineligible, because he bore the burden of establishing that he could not. Equivocation is insufficient. See *In re Matter of Worker's Compensation Claim of Thornberg,* 913 P.2d 863, 869 (Wyo.1996) (where treating doctor hedged his opinion by stating that causation was certainly a possibility, but that he would not make an authoritative statement petitioner failed to carry the burden of proof to establish entitlement to benefits); see also *Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment,* 845 P.2d 387, 393 (Wyo.1993) (party with burden of persuasion cannot satisfy that burden if the evidence is in equipoise or the opposing party's preponderates the party with the burden must fail.) This Court finds the evidence before the hearing examiner was in equipoise. In such a situation, under Wyoming law the party with the burden of proof must fail. See *Campbell County School Dist. v. State,* 907 P.2d 1238, 1266 (Wyo.1995) (where evidence at trial found to be in equipoise, the party with the burden of proof must necessarily lose.)

Mr. Rodeman could not testify or opine that the Respondent could not perform the county assessor position. In fact, he conceded that Respondent could perform the job, but that he needed more information to determine whether he could do so safely. Yet, the Hearing Examiner found that

"Rodeman testified that the county assessor jobs described in EC–28, and EC–29 do not give much of physical capabilities, for him to determine that Dial could perform the job." (ROA, Vol. I, p. 6.) However, Rodeman's testimony was actually the opposite:

> A. . . . Last part of that page is Sheridan, Wyoming extending to the next page on E–29, again stating about fences, measuring structures and so it's another general description of that. So out of these three pages, the description of the Rock Springs county assessor's job is probably the best, but it still lacks information on whether I could safely say that Mr. Dial could perform the job or not.
>
> . . .
>
> Q. So are you able to ascertain from any of those descriptions whether or not Mr. Dial is able to assume any of those positions based on these descriptions?
>
> A. The Rock Springs job has the best description of the job, but I still have a couple of questions before I could say safely. **He could probably perform the job,** but is it safe or not. So I had need to know the frequency of the lifts and the carries.

(ROA, Vol. III, pp. 58–60.) (emphasis added.) Thus, at best Mr. Rodeman needed more information to determine whether the Respondent could not perform the county assessor jobs. Absent that additional information any opinion or finding that he could not would be pure speculation. See *Langberg v. State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division,* 2009 WY 39, ¶ 16 [203 P.3d 1098] (Wyo.2009) (where expert could not necessarily say that claimant's condition started from original injury such a claim would be pure speculation which does not rise to level of proof necessary to support award). Speculation does not satisfy Respondent's burden in this case. Thus, the Hearing Examiner's finding was erroneous. Even given the benefit of doubt, the burden and question remained whether Respondent was capable of performing the county assessor job. Based upon the testimony of Mr. Rodeman, the Respondent's ability to perform the job was equivocal at best, which fails to sustain the Respondent's burden of proof.

It should also be noted that the Hearing Examiner's findings never ultimately addressed whether Respondent could or could not perform the county assessor jobs. Given the foregoing discussion, the Hearing Examiner could not have made such a finding, because no evidence was ever presented to demonstrate his inability to perform those jobs. Hence, Respondent did not meet his burden, and the Hearing Examiner's decision must be reversed.

### CONCLUSION

The Hearing Examiner's decision awarding PPD benefits to Respondent must be reversed. Based upon a review of the entire record which a reasonable mind might accept in support of the agency's conclusion, this Court concludes that Respondent failed to establish, by a preponderance of evidence, that he was incapable of finding employment in Wyoming at a wage that was at least 95% of his pre-injury wage. The evidence as a whole failed to establish he was incapable of performing the county assessor jobs.

Dial timely appealed the district court's order.

### STANDARD OF REVIEW

[¶ 32] In this appeal of the district court's appellate review of the OAH hearing examiner's administrative decision, we review the case as if it came to this Court directly from the hearing examiner. Although we do not afford deference to the district court's appellate decision, *Ball v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2010 WY 128, ¶ 19, 239 P.3d 621, 627 (Wyo.2010), the district court's decision is of help to this Court as an aid to our analysis and may reveal some factor not apparent to the parties but a subject of judicial discernment. *Id.,* ¶ 19 n. 1, 239 P.3d at 627 n. 1. In the instant case, our judicial review is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c)(ii)(A) and (E) (LexisNexis 2009):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 33] In regard to these considerations, [w]e affirm an agency's findings of fact if they are supported by substantial evidence. *Dale* [*v. S & S Builders, LLC,* 2008 WY 84], ¶ 22, 188 P.3d [554] at 561 [ (Wyo.2008) ]. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Id.,* ¶ 11, 188 P.3d at 558, quoting *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2002 WY 91, ¶ 12, 49 P.3d 163, 168 (Wyo.2002), quoting *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Jensen,* 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001). We review an agency's conclusions of law *de novo. Dale,* ¶ 26, 188 P.3d at 561. We employ the arbitrary and capricious standard as a "safety net" against agency action that is contrary to law but not readily correctible under the other applicable standards of review. *See id.,* ¶¶ 23–24, 188 P.3d at 561. *Shelest v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2010 WY 3, ¶ 7, 222 P.3d 167, 170 (Wyo.2010). One of the circumstances included in the arbitrary and capricious "safety net" concerns the hearing examiner's failure to provide appropriate findings of fact and conclusions of law in the administrative decision. *Alphin v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2010 WY 39, ¶ 13, 228 P.3d 61, 66 (Wyo.2010). When we identify such a circumstance, we emphasize that:

A hearing officer is required to support his conclusions with adequate findings of fact. Wyo. Stat. Ann. § 16–3–110 (Lexis-Nexis 2005). A hearing officer has "the duty to make findings of basic facts upon all of the material issues in the proceeding and upon which its ultimate findings of fact or conclusions are based. Unless that is done there is no rational basis for judicial review." *Pan Am. Petroleum Corp. v. Wyoming Oil and Gas Conservation Comm'n,* 446 P.2d 550, 555 (Wyo.1968). In order for this Court to have a rational basis upon which to conduct a review:

All of the material evidence offered by the parties must be carefully weighed by the agency as the trier of the facts; conflicts in the evidence must be resolved, and the underlying or basic facts which prompt the ultimate conclusion on issues of fact drawn by the agency in sustaining the prima facie case made, or in rejecting it for the reason it has been satisfactorily met or rebutted by countervailing evidence, must be sufficiently set forth in the decision rendered.

*Id.* at 557.

*Bush* [*v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120], ¶ 9, 120 P.3d [176] at 180 [ (Wyo. 2005) ]; *see also Decker v. State of Wyoming ex rel. Wyoming Medical Commission,* 2005 WY 160, ¶ 27, 124 P.3d 686, 695 (Wyo.2005).

*Olivas v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2006 WY 29, ¶ 13, 130 P.3d 476, 482–83 (Wyo.2006).

[¶ 34] We have also cautioned that such failures at the administrative contested case hearing level cannot be cured by the parties' appellate briefing in this Court. *Rodgers v. State ex rel. Wyoming Workers' Safety & Comp. Div.,* 2006 WY 65, ¶ 29, 135 P.3d 568, 579 (Wyo.2006). Indeed, in their appellate briefing, the parties' citations of evidence presented to the hearing examiner, but not

included in the administrative decision, highlight that decision's deficiencies. *Id.* "If the evidence were material, it should have been included in the findings of facts" made by the hearing examiner. *Id.*

## DISCUSSION

[¶ 35] My thorough review of the record on appeal reveals that the key material issues of the contested case hearing were (1) the availability of medium work capacity employment at a wage that was 95% of the monthly gross earnings that Mr. Dial was earning when injured and (2) Mr. Dial's ability to perform that employment if available. It is obvious that the parties' evidence on these key material issues was in conflict. Without going into considerable detail, I can summarize the parties' respective evidentiary positions on these two issues.

[¶ 36] With respect to the issue of availability of employment, the Division's evidence consisted of Ms. White's vocational report and addendum and her deposition testimony. She testified that employment was available as a cement truck driver, Schwan's sales route driver, and county assessor field appraiser in several Wyoming cities. The only direct finding of fact made by the hearing examiner concerning Ms. White's evidence is the scant statement in Finding of Fact # 15. There, the hearing examiner makes no finding about the several county assessor field appraiser jobs, states that Ms. White did not consider the Schwan's sales route driver job because Mr. Dial did not drive, but fails to make any finding of fact concerning the reason why Mr. Dial did not drive. Considerable evidence in this record explained that Mr. Dial's driver's license had been suspended because of a violation of the law which occurred when he was driving on April 3, 2006, after his neck injury and surgery. The hearing examiner's findings of fact fail to report that evidence; the only reference made being found in Finding of Fact # 13: "Dial testified that he does not have a drivers' license."

[¶ 37] In conflict with the Division's evidence on this issue of the availability of employment, Mr. Dial's evidence consisted of Mr. Rodeman's testimony criticizing Ms. White's evidence presented by the Division.

In stark contrast to the hearing examiner's scant statement in Finding of Fact # 15 about Ms. White's evidence, the hearing examiner recounts at some length in Finding of Fact # 11 Mr. Rodeman's criticisms of Ms. White's evidence about the cement truck driver job. However, with respect to the Schwan's sales route driver job and the several county assessor field appraiser jobs identified by Ms. White, the hearing examiner's statement in Finding of Fact # 11 is simply that Mr. Rodeman testified that Ms. White's general description of the sales route driver job "does not allow him to determine whether it meets Dial's limitation" and that "the county assessor jobs ... do not give much of physical capabilities, for him to determine that Dial could perform the jobs."

[¶ 38] The hearing examiner's findings of fact on the issue of the availability of employment are insufficient. In particular, the hearing examiner must evaluate the parties' evidence on the Schwan's sales route driver job and the several county assessor field appraiser jobs and make basic findings of fact and explain why those findings are supported by the evidence. In this case, these insufficient findings of fact have resulted in an insufficient conclusion of law in Conclusion of Law # 24. There, the hearing examiner's conclusion simply states Mr. Rodeman's testimony that Mr. Dial could not perform the cement truck job and that Mr. Rodeman could not determine if the sales route driver job was within Mr. Dial's restrictions. The hearing examiner states no conclusion of law concerning the county assessor field appraiser jobs. Moreover, as the district court noted in its earlier review, the hearing examiner's conclusion misstates Mr. Rodeman's testimony about the county assessor field appraiser job in Rock Springs. His testimony was:

The Rock Springs job has the best description of the job, but I still have a couple of questions before I could say safely. He could probably perform the job, but is it safe or not. So I had need to know the frequency of the lifts and the carries.

[¶ 39] With respect to the issue of Mr. Dial's ability to perform the employment if

available, the Division's evidence consisted of Ms. White's deposition testimony and vocational report; Dr. Zondag's independent medical evaluation, numerous medical reports documenting his physical examinations of Mr. Dial between September 2005 and June 2007; his affidavit dated June 18, 2007, and his deposition testimony; and Mr. Dial's testimony about his having driven a motor vehicle after his injury and surgery and having his driver's license suspended for a driving violation that had occurred on April 3, 2006, about eleven months after his neck surgery. I note that in Ms. White's interview of Mr. Dial in December 2006, he told her that he was frightened of driving and worried about not being able to see someone when driving because of the stiffness in his neck. Yet, at the hearing, Mr. Dial testified that his neck range of motion "is still the same. It's just slower," and he expressed the opinion that it would be unsafe for him to drive a truck for that reason. In conflict with that testimony, Dr. Zondag's affidavit dated June 18, 2007, attested that he had "not indicated to Mr. Dial that he cannot drive," and "Mr. Dial's work-related medical condition is not preventing him from operating a motor vehicle at this time." In addition, Dr. Zondag's deposition testimony indicates that Mr. Dial could perform the jobs available.

[¶ 40] I find it noteworthy that the Division submitted a large body of evidence about Mr. Dial's medical condition and ability to perform available jobs which had been developed by Dr. Zondag. This large body of evidence included Dr. Zondag's independent medical evaluation in September 2005, his medical records of his later examinations of Mr. Dial after that early date, his affidavit dated June 18, 2007, and his testimony in his deposition taken on October 11, 2007, about three weeks before the contested case hearing. And yet despite this large body of evidence, the hearing examiner's decision, in Finding of Fact # 14, devotes only a very brief paragraph about Dr. Zondag's independent medical evaluation on September 29, 2005, and devotes nothing to the other substantial evidence of Dr. Zondag's. When I contrast the hearing examiner's lengthy treatment of Mr. Rodeman's testimony with the hearing examiner's quite brief treatment of Dr. Zondag's evidence, I can only conclude that the hearing examiner failed to consider most of Dr. Zondag's evidence.

[¶ 41] In conflict with the Division's evidence on the issue of Mr. Dial's ability to perform the jobs available, Mr. Dial's evidence consisted of Ms. Mahaffey's testimony, Mr. Dial's testimony, and Mr. Rodeman's testimony. In her testimony, Ms. Mahaffey expressed opinions that Mr. Dial's range of motion in his neck "seems to be guarded" and it was unsafe for him to drive. I recounted above Mr. Dial's testimony about the range of motion in his neck and his fear of driving. Mr. Rodeman testified about his concern whether Mr. Dial could safely perform the available jobs. It is noteworthy that Mr. Rodeman had not examined or evaluated Mr. Dial's condition since his evaluation on September 27, 2005, whereas Dr. Zondag had examined Mr. Dial on numerous occasions after that time, and most recently in June 2007, just four months before the hearing. My review of the hearing examiner's order reveals that the hearing examiner failed to resolve the conflicting evidence on this issue. Moreover, the hearing examiner failed to consider the significance, if any, of Mr. Dial's driver's license suspension as it related to the requirements of the available jobs of Schwan's sales route driver and county assessor field appraiser.

[¶ 42] Having carefully reviewed the hearing examiner's order in light of my review of the material evidence offered by the parties, I can only conclude that the hearing examiner has not carefully weighed all of the material evidence and has not resolved the conflicts in that evidence. Consequently, the hearing examiner has failed to sufficiently set forth in the decision rendered the underlying or basic facts which prompt the ultimate conclusions on the key material issue of fact presented at the contested case hearing. Until that careful weighing of the conflicting evidence is done, conflicts in the evidence are resolved, findings of basic facts are made, and ultimate conclusions upon those basic facts are made, this Court has no rational basis upon which to conduct its appellate review of the hearing examiner's decision. I

would reverse the order of the district court and remand this case to that court with directions to vacate the order denying benefits. Further, I would direct the district court to remand the case to the OAH for supplemental findings of fact and conclusions of law.