2006 WY 114

**In the Matter of the Worker's Compensation Claim of Kirk T. BONSELL, Appellant (Respondent/Appellee),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISON, Appellee (Petitioner/Appellant).**

No. 05–273.

Supreme Court of Wyoming.

Sept. 14, 2006.

Representing Appellant: Bill G. Hibbler, Cheyenne, Wyoming.

* Chief Justice at time of expedited conference.

Representing Appellee: Patrick J. Crank, Attorney General; John Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; Kristi M. Radosevich, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Kirk Bonsell challenges the district court's reversal of the Office of Administrative Hearings' (OAH) order awarding him permanent partial disability (PPD) benefits. After reviewing the entire record, we conclude the hearing examiner's decision Mr. Bonsell had suffered a loss of earning capacity as a result of his work-related injury was supported by substantial evidence and in accordance with law. The district court improperly substituted its judgment when it reversed the OAH order awarding benefits. Consequently, we reverse and remand.

## ISSUES

[¶ 2] Mr. Bonsell states a single issue on appeal:

Whether the decision of the Office of Administrative Hearings holding that claimant, Mr. Bonsell, was entitled to a permanent partial disability award, is supported by substantial evidence and is in accordance with Wyoming Statute § 27–14–405(h)(i)?

The Division poses the following issues:

Issue I.  Whether the Office of Administrative Hearings' decision awarding permanent partial disability benefits to Bonsell lacks the support of substantial evidence and is arbitrary and capricious?

Issue II.  Whether the Office of Administrative Hearings' decision awarding permanent partial disability benefits to Bonsell is contrary to law?

## FACTS

[¶ 3] Mr. Bonsell injured his back while working as a manager of a paint store in Rock Springs. At the time of his injury, Mr.

Bonsell was earning a wage of $9.00 per hour. However, he routinely worked overtime, bringing his gross monthly wage up to $2,145.00. Mr. Bonsell's injury was deemed compensable and he received medical and temporary total disability benefits.

[¶ 4] Once Mr. Bonsell had recovered to the point of ascertainable loss, he underwent a functional capacity evaluation (FCE) and a physician assigned him a permanent partial impairment rating (PPI) of twelve percent (12%) of his whole body. Mr. Bonsell accepted a PPI award of that percentage and, thereafter, applied for PPD benefits to compensate him for loss of earning capacity.

[¶ 5] The Division arranged for Mr. Bonsell to be assessed by a vocational evaluator. The initial evaluation considered only employment in Texas because he had moved to that state after he was injured, but it was later amended with a labor market survey of Wyoming jobs. The Division denied Mr. Bonsell's request for PPD benefits because the vocational evaluation indicated he could "return to an occupation at a comparable wage." Mr. Bonsell objected to the Division's final determination and requested a hearing. Prior to the contested case hearing, he accepted a job which paid $9.00 per hour. His new job did not, however, offer any opportunities for overtime; consequently, his post-injury gross monthly earnings were approximately $1,562.40.

[¶ 6] The OAH held a contested case hearing on June 10, 2004, and issued an order awarding Mr. Bonsell PPD benefits. The Division filed a petition for review of the OAH decision with the district court. The district court reversed the OAH order, concluding "[t]he record does not contain substantial evidence which connects [Mr. Bonsell's] wage reduction to his injury." Mr. Bonsell appealed to this Court.

## STANDARD OF REVIEW

[¶ 7] In reviewing an appeal from a district court's decision on a petition for review of an administrative action, we afford no deference to the district court's decision and, instead, review the case as if it came directly from the agency. *Newman v. State ex rel.*

*Wyo. Workers' Safety and Comp. Div.,* 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002). Judicial review of agency decisions is limited to those considerations specified in Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2005), which provides in pertinent part:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶ 8] In *KG Construction, Inc. v. Sherman,* 2005 WY 116, ¶ 9, 120 P.3d 145, 147–48 (Wyo.2005), we explained the standard for reviewing an agency's factual findings:

The substantial evidence test is the appropriate standard of review in appeals from contested case proceedings when factual findings are involved and both parties submit evidence. *Robbins v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2003 WY 29, ¶ 18, 64 P.3d 729, 732 (Wyo.2003). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence. Even if the factual findings are found to be supported by substantial evidence, the ultimate agency decision may still be found to be arbitrary or capricious for other reasons. An appellate court does not examine the record only to determine if there is substantial evidence to support the agen-

cy's decision, but it also must examine the conflicting evidence to determine if the hearing examiner could have reasonably made its finding and order upon all of the evidence before it. *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2002 WY 91, ¶ 24, 49 P.3d 163, 172 (Wyo.2002).

*See also, Diamond B Services, Inc. v. Rohde*, 2005 WY 130, ¶ 11, 120 P.3d 1031, 1037–38 (Wyo.2005).

[¶ 9]   We do not defer to the agency's determination on issues of law; instead, we will correct any error made by the agency in either interpreting or applying the law. *Blommel v. State ex rel. Wyo. Dep't of Employment, Div. of Wyo. Workers' Safety and Comp.*, 2005 WY 128, ¶ 9, 120 P.3d 1013, 1015 (Wyo.2005).   "The interpretation and correct application of the provisions of the Wyoming Worker's Compensation Act [is] a question of law over which our review authority is plenary." *Id.*

## DISCUSSION

[¶ 10]   Mr. Bonsell applied for PPD benefits under the Wyoming Worker's Compensation Act, Wyo. Stat. Ann. §§ 27–14–101, *et. seq.* (LexisNexis 2005).   "Permanent partial disability" is defined as "the economic loss to an injured employee … resulting from a permanent physical impairment[.]"   Section 27–14–102(a)(xv).   *See also, Phillips v. TIC–The Industrial Co. of Wyoming, Inc.*, 2005 WY 40, ¶ 29, 109 P.3d 520, 533 (Wyo.2005).   In order to be eligible for PPD benefits, a claimant must demonstrate he has suffered a loss of earning capacity due to a work-related injury. *McCarty v. Bear Creek Uranium Co.*, 694 P.2d 93, 94 (Wyo. 1985).   An injured worker has the burden to prove each of the elements of his claim by a preponderance of the evidence. *Abeyta v. State ex. rel. Wyo. Workers' Safety and Comp. Div.*, 2004 WY 50, ¶ 5, 88 P.3d 1072, 1075 (Wyo.2004).

[¶ 11]    Section 27–14–405(h) incorporates the "loss of earnings" concept into the statutory requirements for PPD benefits:

(h) An injured employee awarded permanent partial impairment benefits may apply for a permanent disability award subject to the following terms and conditions:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury;

(ii) An application for permanent partial disability is filed not before three (3) months after the date of ascertainable loss or three (3) months before the last scheduled impairment payment, whichever occurs later, but in no event later than one (1) year following the later date; and

(iii) The employee has actively sought suitable work, considering the employee's health, education, training and experience.

The parties stipulated all of the requirements of § 27–14–405(h) had been satisfied except for the "comparable wage" requirement of subsection (i).

[¶ 12]   "In determining whether an employee has suffered a loss of earning capacity both medical and non-medical evidence may be relevant." *Chavez v. Memorial Hosp. of Sweetwater County*, 2006 WY 82, ¶ 8, 138 P.3d 185, 189 (Wyo.2006).   *See also, McCarty*, 694 P.2d at 94–95.   Although no individual factor is determinative, the following considerations are relevant to the loss of earning capacity inquiry:   the employee's physical impairment, including the nature and extent of his injury;   age;   education;   actual earnings, including pre-injury and post-injury earnings;   ability to continue pre-injury employment;   and post-injury employment prospects. *Chavez*, ¶ 8, 138 P.3d at 189.   *See also, State ex rel. Wyo. Worker's Comp. Div. v. White*, 837 P.2d 1095 (Wyo. 1992);   *Whiteman v. Workers' Safety and Comp. Div.*, 987 P.2d 670 (Wyo.1999).   The fact finder has the discretion to assign weight to the individual factors. *McCarty*, 694 P.2d at 95;   *Chavez*, ¶ 8, 138 P.3d at 189.   "Wages earned by the employee [are] material to the question of the employee's earning capacity and [are] entitled to whatever weight the fact finder gives to it." *McCarty*, 694 P.2d at 95.

[¶ 13]   In deciding Mr. Bonsell had suffered a loss of earning capacity and was,

therefore, entitled to an award of PPD benefits, the hearing examiner made the following conclusions of law:

8. The Vocational Evaluation provides a list of potential jobs for the Claimant but is somewhat speculative. However, the fact that the Claimant is currently employed provides the most realistic vocational analysis. The Office takes the analysis in *Lunde* one step further as the Court stated there must be some basis in reality. However, if an employee has returned to the work force this ... is most convincing and a determinative measure of employment.

9. On its face, the Office looks to the hourly wage the Claimant was and is currently earning. On their face, both pre- and post-injury wages are $9.00 per hour. However, the Office goes further as required by law as to what the Claimant's actual monthly income is. The Claimant was making regular overtime as manager for $2,145.00 a month for an hourly wage of over $11.00 an hour at the time of injury. Accordingly the Division was paying $1,430.00 per month as two-thirds of his monthly wage as temporary total disability. He is currently earning approximately $1,562.40 per month with no chance of overtime.

10. Therefore, in light of his physical restriction and the fact that the Claimant is currently making less than 95% of the amount he was making at the time of the injury, and this decrease in income is based on the fact the Claimant cannot perform work as he once did because of his physical restrictions; accordingly, he has met the requirements of W.S. 27–14–405(h) and is entitled to a permanent partial disability award.

[¶ 14] The Division claims the OAH decision awarding Mr. Bonsell PPD benefits was not supported by substantial evidence and was arbitrary, capricious and contrary to law. Although the Division's argument is somewhat scattered, its primary complaints seem to be there was insufficient evidence to establish Mr. Bonsell's loss of earnings was caused by his work related injury and the hearing examiner improperly discounted the vocational evaluation in reaching his decision.

[¶ 15] We turn first to the Division's contention there was an insufficient causal connection between Mr. Bonsell's loss of earnings and his injury. The Division claims his loss of earnings resulted from extraneous factors unrelated to his injury, including the closing of the paint store and refusal of his current employer to allow Mr. Bonsell to work overtime.[1] As the statute clearly states, the employee's inability to return to employment at a wage of at least 95% of his pre-injury monthly gross earnings must be "because of the injury" in order to justify a PPD award. Section 27–14–405(h)(i). One of the factors considered in determining whether an employee is eligible for PPD benefits is the ability to continue in his pre-injury employment. *See, e.g., State ex rel. Wyo. Workers' Safety and Comp. Div. v. Savicki,* 2004 WY 71, ¶ 12, 92 P.3d 294, 296 (Wyo.2004) (claimant could not return to work as a drywaller for former employer); *State ex rel. Wyo. Workers' Safety and Comp. Div. v. Borodine,* 784 P.2d 228, 230 (Wyo.1989) (claimant could not return to work as a union painter).

[¶ 16] The record establishes the paint store where Mr. Bonsell worked closed shortly after he was injured. The Division claims the closing of the store, rather than his injury, caused Mr. Bonsell's loss in earning capacity. The undisputed facts establish, however, regardless of whether or not the paint store closed, Mr. Bonsell could not return to his position as paint store manager because he was restricted in his ability to lift items. Prior to his injury, he routinely lifted large buckets of paint and industrial coatings, weighing as much as seventy-five pounds. After his injury, the medical providers limited him to "medium" duty work and the functional capacity evaluation stated he could lift a maximum of twenty-five pounds

---

1. The Division also suggests Mr. Bonsell may not have been able to secure a comparable job because he was not searching for appropriate jobs, the job market or economy affected his ability to get a job, and/or his resume and interview skills were not adequate. These arguments are not well-explained in the briefs or supported by the record.

from the floor to his waist and carry a maximum of forty-five pounds, but on a very limited basis. The medical evidence indicated it would not be appropriate for Mr. Bonsell to return to a position like the one at the paint store because of the risk of re-injury from the heavy lifting required by the job. The record contains substantial ·evidence Mr. Bonsell was not physically capable of returning to his prior employment; consequently, the fact the paint store closed was not the cause of his loss of earnings.

[¶ 17] The Division also argues Mr. Bonsell's new employer's refusal to allow him to work overtime, rather than his injury, was the cause of his loss of earning capacity. Mr. Bonsell conducted an extensive job search, utilizing information from job service agencies, newspaper advertisements, personal contacts, and his wife's co-workers. He testified he considered all jobs, as long as there was no heavy lifting requirement, and he did not rule out any jobs on the basis of wages. Mr. Bonsell looked specifically for jobs similar to those referenced in the vocational evaluation. Ultimately, he accepted the only job offered to him—a bookkeeper and customer service position that paid $9.00 per hour. He worked forty-hour weeks in his new position, and, although he was not medically prohibited from working overtime, the company did not allow it. Thus, his gross monthly income in his new position was approximately $1,562.40, amounting to less than 95% of his pre-injury gross monthly income.

[¶ 18] Prior to his employment at the paint store, Mr. Bonsell had worked as a pre-loader for a delivery service. The pre-loader job paid more than his post-injury position, but it required continuous repetitive lifting and movement. Mr. Bonsell testified that, after his injury, he could no longer perform that type of work. Consequently, before his injury he had held two jobs (paint store manager and pre-loader) which paid better than his post-injury position. Mr. Bonsell was no longer able to perform the type of activities required by those higher paying jobs. As we recognized in *Borodine,* a worker suffers a loss of earning capacity when, because of his injury, he is deprived of his ability to rely upon prior work experi-

ence. In this case, Mr. Bonsell is no longer able to rely upon his prior experience with the paint store or as a pre-loader because of his back injury. Consequently, there is substantial evidence in the record to support the conclusion Mr. Bonsell's back injury resulted in a loss of earning capacity.

[¶ 19] The Division argues the OAH should have relied upon the vocational evaluation, which identified a number of positions paying wages comparable to his pre-injury wage, instead of his actual employment in making its "loss of earnings" determination. The vocational evaluation was prepared in Texas and originally referenced only positions in that geographic area. The vocational evaluator reviewed Mr. Bonsell's functional capacity evaluation and acknowledged he had some physical deficits, however, she incorrectly stated the "FCE ... does not specify lifting restrictions." The vocational evaluator also used his $9.00 hourly wage as the basis for her conclusions instead of his gross monthly earnings, including overtime pay.

[¶ 20] The initial evaluation identified three types of jobs Mr. Bonsell could perform: manager of a retail store, sales clerk or trailer rental clerk. The physical demands for each of the positions were listed as "light." The vocational evaluation did not list specific wage ranges for any of the positions identified, but included a general statement that "[t]he jobs surveyed paid an hourly wage that ranged from $7.00 to $25.00 an hour." An addendum was later made to the vocational evaluation which included a labor market survey of Wyoming jobs.

[¶ 21] We have explained the role of vocational evaluations in prior decisions. In *Lunde v. State ex rel. Wyo. Workers' Comp. Div.,* 6 P.3d 1256, 1260 (Wyo.2000), we rejected a vocational evaluation that considered only jobs in California and did not take into account the claimant's physical disabilities. We said: "[I]f the Division is going to rely on a vocational evaluation to demonstrate current earning capacity, then that should be based on available jobs in Wyoming. In this case, as would be the case with any disabled worker, the jobs used in such an evaluation must be conducted with some basis in reality

which gives recognition to the worker's disability." *Lunde*, 6 P.3d at 1260. Presumably, the Division attempted to comply with the *Lunde* requirement in this case by having the evaluator conduct a survey of Wyoming jobs and attaching it as an addendum to the vocational evaluation.

[¶ 22] The hearing examiner concluded the vocational evaluation was speculative and chose to rely upon Mr. Bonsell's actual employment rather than the theoretical vocational evaluation to determine whether he had suffered a loss of earning capacity. The Division argues the hearing examiner's conclusion the vocational evaluation was speculative was erroneous.[2] As noted earlier, the vocational evaluation did not refer to Mr. Bonsell's lifting restrictions and did not use the correct wage as the basis for its conclusions. Instead, it simply identified three types of jobs available in Texas and stated, without specificity, those jobs paid between $7.00 and $25.00 per hour.

[¶ 23] The addendum provided greater specificity with regard to jobs available in Wyoming. However, the majority of the jobs identified in the addendum involved teaching or counseling children and, although Mr. Bonsell has a bachelor's degree in social sciences, there was no indication he has qualified for these positions. In addition, some of the jobs listed in the supplemental evaluation had physical requirements Mr. Bonsell could not perform and some of the employers surveyed had no current or expected job openings.

[¶ 24] In considering the vocational evaluation and Mr. Bonsell's actual employment, the hearing examiner decided to give greater weight to his actual employment. Determining the weight to be assigned to the evidence is the responsibility of the finder of fact. *See McCarty*, 694 P.2d at 95; *Chavez*, ¶ 8, 138 P.3d at 189. Although the evidence in this case may be subject to different interpretations, substantial evidence exists in the record to support the OAH's determination Mr. Bonsell's actual employment was a more reliable indicator of his ability to earn a living than the vocational evaluation.

[¶ 25] The hearing examiner's approach was consistent with our recent opinion in *Chavez*. We emphasized the focus of § 27–14–405(h) is on the injured employee's true ability to earn a living. *Chavez*, ¶¶ 15, 17, 138 P.3d at 191. In *Chavez*, the claimant's post-injury employment paid more than her pre-injury position and, consequently, we ruled the hearing examiner properly granted the Division's motion for summary judgment because, as a matter of law, she could not demonstrate a loss of earning capacity. *Chavez*, ¶ 19, 138 P.3d at 192. *See also, Savicki*, ¶ 13, 92 P.3d at 296. We specifically held any issues concerning the validity of Ms. Chavez's vocational evaluation were irrelevant because she had voluntarily accepted a job that paid more than her pre-injury wage. Applying the same rationale here, it is clear after a diligent search Mr. Bonsell was unable to find a job that paid a wage comparable to his pre-injury wage. Considering his actual post-injury wage, together with his physical limitations, the hearing examiner's determination Mr. Bonsell's earning capacity was reduced because of his work-related injury is supported by substantial evidence and is not, in any other fashion, arbitrary, capricious or contrary to law.

## CONCLUSION

[¶ 26] The district court improperly substituted its judgment for the fact finder's when it reversed the OAH decision awarding Mr. Bonsell benefits. The OAH decision was supported by substantial evidence and was not otherwise arbitrary, capricious or contrary to law. Consequently, we reverse and remand to the district court with directions the case be returned to the OAH for reinstatement of the order awarding benefits to Mr. Bonsell.

[¶ 27] Reversed and remanded.

---

2.  The district court agreed with the Division's          argument about the vocational evaluation.