# IN THE SUPREME COURT, STATE OF WYOMING

# 2013 WY 75

### APRIL TERM, A.D. 2013

### June 18, 2013

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

DANIEL L. DECKER,

Appellant
(Claimant/Petitioner),

v.                                                        S-12-0250

STATE OF WYOMING, ex rel.,
WORKERS' SAFETY AND
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Campbell County*
*The Honorable Dan R. Price II, Judge*

*Representing Appellant:*
William G. Hibbler of Bill G. Hibbler P.C., Cheyenne, Wyoming.

*Representing Appellee:*
Gregory A. Phillips, Wyoming Attorney General; John D. Rossetti, Deputy
Attorney General; Michael J. Finn, Senior Assistant Attorney General; Kelly
Roseberry, Assistant Attorney General.

*Before KITE, C.J., and HILL, VOIGT, DAVIS, JJ, and GOLDEN, J., Retired.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**VOIGT, Justice.**

[¶1]    Daniel L. Decker, the appellant, applied for a permanent partial disability award. The Wyoming Worker's Safety and Compensation Division's (Division) denial of that application was upheld by the Office of Administrative Hearings (OAH) on the basis that the appellant failed to show that he was unable to return to work at a wage at least 95% of his earnings at the time of his injury. The district court affirmed the OAH's decision, albeit based on a different assessment of the appellant's ability to earn a living in the aftermath of his injury. We affirm.

## ISSUE

[¶2]    Was the OAH's decision supported by substantial evidence and was the decision properly supported by the law?

## FACTS

[¶3]    The appellant was diagnosed with wrist tendonitis as a result of a work-related injury and on September 10, 2001, received a Temporary Total Disability award, calculated based on monthly earnings of $4,290.00. The appellant's symptoms, however, progressed and he was re-diagnosed with thoracic outlet syndrome. Although the Office of the Medical Commission disagreed with this diagnosis, the appellant was eventually awarded benefits after two reversals by this Court. *See Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, 124 P.3d 686 (Wyo. 2005); *Decker v. State ex rel. Wyo. Med. Comm'n*, 2008 WY 100, 191 P.3d 105 (Wyo. 2008).

[¶4]    The current issue originated with the appellant's application for permanent disability benefits. On November 18, 2010, the Division issued a Final Determination of Permanent Partial Impairment Benefit, indicating that the appellant's work-related injury had resulted in a 4% whole body permanent partial impairment. On December 1, 2010, the appellant filed an Application for Permanent Disability Award or Vocational Rehabilitation Benefits. The Division denied that application after determining that the appellant had returned to work at a "comparable wage" and failed to comply with Wyo. Stat. Ann. § 27-14-405(h)(i) (LexisNexis 2011). The Division concluded, "[y]ou were earning $4,290.00 a month as a sheet metal worker at the time of injury, and you are now earning an average of $4,355.34 a month at Powder River Heating and Air Conditioning." The appellant appealed that determination to the OAH.

[¶5]    The OAH rejected the appellant's argument that it was bound by the monthly wage at the time of the injury of $4,290.00, as determined by the September 10, 2001, final determination issued by the Division. The hearing officer determined that the evidence contradicted this figure. Instead, the OAH relied upon the appellant's pay receipts from the third quarter of 2001 for an average monthly wage of $3,496.65. To

1

determine the appellant's wage at the time he filed for permanent partial disability benefits, the OAH looked at the appellant's earnings in the fourth quarter of 2010, for an average of $4,355.34 per month. According to these findings, the OAH determined that the appellant was earning more than 95% of the wage earned at the time of the injury and, therefore, denied his appeal.

[¶6]    After another appeal by the appellant, the district court reached the same ultimate conclusion as the OAH, although based on different wages. The district court agreed with the OAH's determination that the appellant earned $3,496.65 at the time of his injury, but the district court rejected the OAH's reliance upon the appellant's fourth quarter of 2010 earnings to determine his post-injury wage. The district court agreed with the appellant and concluded that it would be more appropriate to take a broader view of the appellant's post-injury wage and relied upon the appellant's wages from the entire seven-year period preceding his application for permanent partial disability benefits. According to the district court, the average monthly wage over the course of this period was $3,527.00. Based on these revised wages, the district court agreed with the OAH that the appellant was unable to show that he could not return to work at a wage at least 95% of his wage at the time of the injury. The appellant now appeals that decision.

**STANDARD OF REVIEW**

[¶7]    This appeal presents both evidentiary and legal issues. "This court accords no special deference to the district court's decision and will consider the case as if it came directly from the agency." *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Jensen (In re Jensen)*, 2001 WY 51, ¶ 9, 24 P.3d 1133, 1136 (Wyo. 2001).

[¶8]    Whether a post-injury wage is comparable to a pre-injury wage as required by Wyo. Stat. Ann. § 27-14-405(h)(i) for an award of permanent partial disability benefits is a question of law. *Schossow v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 111, ¶ 8, 255 P.3d 941, 943 (Wyo. 2011). "The agency's conclusion[s] of law can only be affirmed if they are in accordance with the law." *Id*. at ¶ 8, at 943 (quoting *Poll v. State ex rel. Dep't of Emp't, Div. of Workers' Safety & Comp.*, 963 P.2d 977, 980 (Wyo. 1998)).

[¶9]    With regard to evidentiary issues, we will not "adjust the decision of the agency unless it is clearly contrary to the overwhelming weight of the evidence on record." *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 26, 49 P.3d 163, 173 (Wyo. 2002) (quoting *Wyo. Steel & Fab, Inc.*, 882 P.2d 873, 875 (Wyo. 1994)). "If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." *Id.* at ¶ 12, at 168 (quoting *Jensen*, 2001 WY 51, ¶ 10, 24 P.3d at 1136).

When the burdened party prevailed before the agency, we will determine if substantial evidence exists to support the finding for that party by considering whether there is relevant evidence in the entire record which a reasonable mind might accept in support of the agency's conclusions. If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo. 1994); [*Board of Trustees, Laramie County School Dist. No. 1 v.*] *Spiegel*, 549 P.2d [1161,] 1178 [(Wyo. 1976)] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Schossow*, 2011 WY 111, ¶ 9, 255 P.3d at 943-44 (quoting *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008)).

## DISCUSSION

[¶10] The appellant suffered a work-related injury in 2001 and now seeks a permanent partial impairment award. It is undisputed that the appellant's injury resulted in a 4% whole-body permanent partial impairment. The parties dispute whether the appellant meets the following condition for benefits:

(i) The injured employee is because of the injury, unable to return to employment at a wage that is at least ninety-five percent (95%) of the monthly gross earnings the employee was earning at the time of injury[.]

3

Wyo. Stat. Ann. § 27-14-405(h)(i) (LexisNexis 2011). Specifically, they disagree regarding the appellant's monthly gross earnings at the time of his injury and regarding the wage he was able to earn when he returned to employment.

[¶11] The Division's Final Determination on Temporary Total Disability Rate of Pay provided that the appellant's monthly earnings at the time of the injury were determined to be $4,290.00. The appellant argues that because the Division's letter also indicated that, "[t]his information has been verified with your employer," this is the appropriate estimation of his wage at the time of the injury. We disagree. There is no evidence in the record to substantiate this figure.

[¶12] On the other hand, the OAH relied upon the appellant's wages, as substantiated by his pay receipt, from the third quarter of 2001 to determine that the appellant earned a monthly average of $3,496.65 over that period. The appellant signed his Wyoming Report of Injury on August 28, 2001. He argues that because the third quarter of 2001 includes over one month of wages he received after his injury, this figure ought to be disregarded. The appellant, however, suggests no reasonable alternative. His suggestion that $4,290.00 is correct is not verified by the evidence. In reality, the evidence shows that the appellant actually earned more in the third quarter of 2001 than he did in either of the two prior quarters from that year. Not only does this quarter represent the most reliable evidence of his wage at the time of injury, but it is also more favorable to the appellant than any other figure that can be verified by the appellant's pay receipts. Because there was substantial evidence to support a monthly wage of $3,496.65 at the time of the appellant's injury, we agree with the OAH.

[¶13] To answer the ultimate issue, the appellant's wage at the time of his injury must be compared to the wage at which he was able to return to work. Wyo. Stat. Ann. § 27-14-405(h)(i). The OAH relied upon the appellant's earnings in the fourth quarter of 2010 to find that the appellant returned to work at a wage of $4,355.34 per month. On appeal, the appellant argues that the OAH should have considered the monthly average either over the entire nine-year period since his injury or the seven-year period during which he has been employed by his current employer. Specifically, he urges this Court to look to either the period from the second quarter of 2003 through the second quarter of 2011 (his total post-injury earnings prior to his application for permanent partial disability) for an average of $3,161 per month, or the period from the third quarter of 2004 through the second quarter of 2011 (his earnings during the period he has spent with his current employer) for an average of $3,527 per month. The district court, as well as the Division on appeal, agreed with this latter figure, as does this Court.

[¶14] We must take into account the appellant's "true ability to earn a living" in the aftermath of his injury. *Schossow*, 2011 WY 111, ¶ 16, 255 P.3d at 945 (quoting *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 25, 142 P.3d 686, 692 (Wyo. 2006)). "This determination cannot be made in a vacuum, nor can it be based

on a static snapshot of the claimant's employment status and wage at any one time." *Schossow*, 2011 WY 111, ¶ 16, 255 P.3d at 945. The OAH impermissibly relied upon a "snapshot" of the appellant's employment history by determining his ability to earn a living based upon wages from a single three-month period since he was injured in 2001.

[¶15] The appellant worked for Powder River Heating as a sheet metal worker from August 1994 until October 2000, at which time he joined Mountain Aire HVAC in a similar capacity until he was injured in September 2001. After receiving medical clearance to do so, the appellant returned to work in April 2003. At that time, the appellant worked in landscaping and retail sales, although it was his goal to return to work in the HVAC industry. In September 2004, he was hired by Powder River Heating, with whom he remains employed. According to his brief, when Powder River Heating rehired the appellant, "[b]ecause he could not work as a sheet metal worker, he was hired in the shipping/receiving department, which drew upon his HVAC and recent retail sales experience."

[¶16] This is a unique situation where a claimant for permanent partial disability award has extensive and continuous employment following his injury prior to his application for benefits. The appellant has been employed for eight years since returning to work prior to filing for benefits, with the latter seven years with Powder River Heating. Due to his extensive history with Powder River Heating, and the HVAC industry in general, as well as the fact that this employment draws upon his expertise as a sheet metal worker in his current position, the appellant's wages during his recent employment by Powder River Heating best represents his ability to earn a living. According to the appellant's payroll history, he earned a total of $287,281.46 from the fourth quarter of 2004, when he was rehired by Powder River Heating, through the second quarter of 2011, when he applied for permanent partial disability benefits. Over those eighty-one months, on average, he earned a monthly wage of $3,546.68.

[¶17] Finally, we can compare the appellant's wage at the time of his injury with his ability to earn a living in the aftermath of becoming permanently disabled. At the time of his injury, the appellant earned $3,496.65. Since returning to work, the appellant has earned an average of $3,546.68 per month. Therefore, the appellant cannot show that he is unable to return to work at a wage that is at least 95% of his pre-injury monthly wage.

## CONCLUSION

[¶18] The appellant is appealing his denial of an award of permanent partial disability benefits for failure to show that he is unable to earn at least 95% of his pre-injury wage. There is substantial evidence in the record that supports the OAH's finding that he earned $3,496.65 per month at the time of his injury. The OAH did misapply the law by comparing this figure to a "snapshot" of the appellant's post-injury earning history. The appellant has spent the seven years prior to his application for permanent partial disability

benefits employed in a position that relies upon his extensive experience and expertise as a sheet metal worker.  This period therefore represents the appellant's true ability to earn a living following his disability.  Because he earned an average of $3,546.68 per month over this period, which is more than he earned prior to his injury, the appellant cannot show that he is unable to return to work at a wage at least 95% of his pre-injury wage. We affirm.