# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 94

### APRIL TERM, A.D. 2015

### July 17, 2015

IN THE MATTER OF THE WORKER'S
COMPENSATION CLAIM OF:

BLAINE LEE DEBYAH,

Appellant
(Petitioner),

v.                                                              S-14-0277

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, WORKERS'
COMPENSATION DIVISION,

Appellee
(Respondent).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
    R. Todd Ingram of Ingram | Olheiser, P.C., Casper, Wyoming.

*Representing Appellee:*
    Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Samantha Caselli, Assistant Attorney General.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]    Blaine Lee Debyah suffered a workplace injury and applied for permanent partial disability, which was denied by the Workers' Compensation Division (Division).  Mr. Debyah requested a contested case hearing, and during discovery, the Division served a number of interrogatories and requests for production related to Mr. Debyah's work history since the time of his injury.  In response, Mr. Debyah asserted his Fifth Amendment right against self-incrimination.  The hearing examiner compelled Mr. Debyah to answer the discovery, but Mr. Debyah consistently invoked the Fifth Amendment.  The hearing examiner dismissed the contested case as a sanction for failing to comply with discovery.  The district court affirmed the dismissal, and Mr. Debyah now appeals to this Court.  We reverse and remand.

## ISSUE

[¶2]    Did the hearing examiner err in dismissing the contested case as a discovery sanction?

## FACTS

[¶3]    Mr. Debyah suffered a workplace injury to his back on October 8, 2009.  He applied for, and received, temporary total disability benefits as a result of his injury.

[¶4]    In 2011, the Division hired a private investigator who began surveillance on Mr. Debyah on November 17, 2011, which continued on and off for nearly a year.  The investigator also interviewed a number of people who had contact with Mr. Debyah through his work.  The private investigator discovered that Mr. Debyah had worked on a number of construction projects beginning in the fall of 2011 and extending through the end of the investigation, which he had not reported to the Division.  The Division also received some information concerning Mr. Debyah's income, though such information seems to be speculative and incomplete.

[¶5]    In the midst of the investigation, Mr. Debyah applied for permanent partial disability benefits, which the Division denied.  Mr. Debyah requested a contested case hearing, and the case was referred to the Office of Administrative Hearings (OAH).  Mr. Debyah learned of the Division's investigation through the proceedings leading up to the contested case hearing.

[¶6]     In preparation for the hearing, the Division served interrogatories and requests for production on Mr. Debyah, many of which requested information regarding Mr. Debyah's work history since his injury.  Mr. Debyah objected to a number of the interrogatories and requests, asserting:

> The request is overly broad, unduly burdensome, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. The only issues in this case are whether Mr. Debyah satisfactorily sought employment and whether his current impairments allow him to return to work at 95% or more of his pre-injury earnings capacity. Whether Mr. Debyah engaged in any manual labor activities going back over three years ago, both before and after his two lower back surgeries, and whether at the insistence of a creditor, for personal benefit, or otherwise, is not relevant to this hearing. The true purpose of this interrogatory is to intimidate Mr. Debyah and place him in fear of collection efforts or prosecution because Mr. Debyah was receiving TTD benefits at or near the time of his post-injury activities. The only issues at-hand, however, involve Mr. Debyah's current condition and his ability to return to 95% or more of his pre-injury earnings.

After sending a letter to Mr. Debyah's attorney requesting that the discovery be answered in full, the Division filed a motion to compel on February 5, 2013. The hearing examiner granted the motion to compel on February 15, 2013, stating:

> [Mr. Debyah] has until close of business on March 1, 2013, to complete and serve upon the [Division] the answers to the [Division's] Combined Interrogatories and Request for Production of Documents to Employee/Claimaint Regarding Referral Dated October 16, 2012. Should [Mr. Debyah] fail to complete and serve the answers to the [Division], sanctions against [Mr. Debyah] shall be ordered and may result in dismissal of this case.

[¶7] Thereafter, Mr. Debyah provided supplemental discovery responses to the Division. In response to many of the discovery requests, Mr. Debyah asserted his Fifth Amendment right against self-incrimination under the federal and state constitutions. Mr. Debyah claimed, "At this time the Division is threatening criminal prosecution of Claimant apparently arising out of Claimant's receipt of TTD benefits following his initial work injury." He based his assertion on a statement made by counsel for the Division to Mr. Debyah's attorney that "if [Mr. Debyah] was working while collecting TTD benefits, . . . he might [have criminal accountability] as it was fraud to submit TTD certifications swearing he was not working when he was."

[¶8] The Division then filed a motion to dismiss, arguing that Mr. Debyah's failure to fully respond to the discovery requests warranted dismissal as a discovery sanction.

2

Within a few days, and without the benefit of a response from Mr. Debyah, the hearing examiner ruled on the Division's motion to dismiss. Instead of dismissing the case, the hearing examiner again compelled Mr. Debyah to fully respond to the discovery requests. In its order compelling discovery, the hearing examiner did not address the propriety of Mr. Debyah's assertion of his Fifth Amendment privilege, but he did warn that failure to comply with the order may result in dismissal. Mr. Debyah filed a motion requesting that the hearing examiner reconsider the second order compelling discovery. In his motion, Mr. Debyah argued that invocation of the privilege was appropriate, assertion of the privilege did not make the proceedings unfair, and the facts that the Division sought to obtain were already known due to its previous investigation. The Division filed a response to Mr. Debyah's motion, again urging the hearing examiner to dismiss the case. On May 3, 2013, the hearing examiner issued an order denying Mr. Debyah's motion to reconsider and dismissing the case. After setting out the facts and recounting the arguments of each party, the hearing examiner determined:

> The issue in this matter was whether Debyah was entitled to PPD benefits. In determining PPD entitlement there [are] numerous factors that this Hearing Examiner must consider, including, but not limited to, actual earnings; pre-injury and post-injury earnings; ability to continue pre-injury employment; and post-injury employment prospects. Debyah's employment prior to September 2011 was not only relevant but important in deciding his entitlement to PPD benefits. There was no question the Division's discovery requests were for relevant information that appears to be reasonably calculated to lead to discovery of admissible evidence. Whether Debyah may or may not face criminal prosecution is up to the discretion of the appropriate prosecuting attorney. The Division does not have the ability to bring criminal charges on its own. It also appears the Division was not using its discovery request to further a possible criminal prosecution.

[¶9]   Mr. Debyah filed a petition for review in district court. Finding that the hearing examiner had not abused his discretion, the district court affirmed the dismissal. Mr. Debyah timely filed his notice of appeal.

### STANDARD OF REVIEW

[¶10]  We review a district court's decision on an administrative action as though it came directly from the administrative agency. *Stevens v. State ex rel. Dep't of Workforce Servs., Workers' Safety & Comp. Div.*, 2014 WY 153, ¶ 30, 338 P.3d 921, 928 (Wyo. 2014) (citing *Hirsch v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2014 WY 61,

3

¶ 33, 323 P.3d 1107, 1115 (Wyo. 2014)). Our review of agency action is strictly limited to "matters specified in [the Wyoming Administrative Procedure Act.]." W.R.A.P. 12.09(a).

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> . . .
>
> (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law;
>
> (B) Contrary to constitutional right, power, privilege or immunity;
>
> (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
>
> (D) Without observance of procedure required by law; or
>
> (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015). Determinations regarding discovery sanctions are committed to the sound discretion of the hearing examiner. *See Global Shipping & Trading, Ltd. v. Verkhnesaldincky Metallurgic Co.*, 892 P.2d 143, 145-46 (Wyo. 1995) ("The rule is that the trial court has broad discretion in controlling discovery."). Under the Wyoming Administrative Procedure Act, we review an agency's dismissal of an action as a discovery sanction to determine whether its decision was "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." Wyo. Stat. Ann. § 16-3-114(c)(A). "In evaluating whether an administrative agency abused its discretion by acting arbitrarily or capriciously, we examine the action to determine whether the agency considered relevant factors in making its decision and whether the decision is rational." *State ex rel. Wyo. Workers' Comp. Div. v. Waggener*, 946 P.2d 808, 813 (Wyo. 1997).

4

## DISCUSSION

### *Did the hearing examiner err in dismissing the contested case as a discovery sanction?*

[¶11] The Fifth Amendment right against self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). The privilege "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Id.* at 445, 92 S.Ct. at 1656.

[¶12] The Ninth Circuit has addressed invocation of the Fifth Amendment during discovery in a civil case, using a two-step analysis. *Davis v. Fendler*, 650 F.2d 1154, 1159 (9th Cir. 1981); *Baker v. Limber*, 647 F.2d 912, 916 (9th Cir. 1981). First, the court must ask whether "the party resisting discovery properly assert[ed] his Fifth Amendment privilege[.]" *Davis*, 650 F.2d at 1159. The court then examines whether the trial court, or administrative agency, abused its discretion in dismissing the case as a Rule 37 sanction. *Id.*

### A. Did Mr. Debyah properly assert his Fifth Amendment privilege?

[¶13] Mr. Debyah invoked his Fifth Amendment privilege after communications with the Division's attorney revealed that Mr. Debyah may be subject to criminal prosecution if he made false statements in his application for temporary total disability benefits. The hearing examiner compelled Mr. Debyah to answer the interrogatories without examining whether Mr. Debyah had the right to invoke his Fifth Amendment privilege, finding only that criminal prosecution was "up to the discretion of the appropriate prosecuting attorney," and "[t]he Division does not have the ability to bring criminal charges on its own." However, the Division's ability to bring criminal charges is irrelevant to a Fifth Amendment analysis. *See Kastigar*, 406 U.S. at 444, 92 S.Ct. at 1656. As the Ninth Circuit stated, "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Baker*, 647 F.2d at 917 (quoting *Hoffman v. United States*, 341 U.S. 479, 486-87, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)).

[¶14] When Mr. Debyah invoked his Fifth Amendment privilege in answering the Division's discovery, he stated:

5

At this time the Division is threatening[1] criminal prosecution of [Mr. Debyah] apparently arising out of [Mr. Debyah's] receipt of TTD benefits following his initial work injury. The bases for the threats of criminal prosecution are the applications for TTD benefits, including the language in the application to the effect that "[u]nder penalty of prosecution for false statement, I swear that the information given by me herein is true and correct." . . . [Mr. Debyah] has asked the Division to agree to a no-prosecution letter limiting the State to potential civil remedies under W.S. § 27-14-511 in order to facilitate full and complete answers to the pending discovery. The Division has refused. The discovery requests seek sworn responses regarding alleged odd jobs or projects that [Mr. Debyah] did at or near the time of his TTD benefit payments. Accordingly, although undersigned counsel believes no crime has been committed whatsoever, counsel has no choice but to advise [Mr. Debyah] to assert his privilege against self-incrimination under the Fifth Amendment to the United States Constitution, and Article 1, Section 11 of the Wyoming Constitution. With this preface, [Mr. Debyah] responds as follows: On the advice of counsel, I hereby assert the privilege against self-incrimination under the federal and state constitutions and decline to answer the question.

Mr. Debyah gave a reasoned explanation for invoking the privilege, considering the criminal penalties for false statements in workers' compensation applications under Wyo. Stat. Ann. § 27-14-510(a) (LexisNexis 2015).[2] It seems clear that Mr. Debyah reasonably believed that his responses to the Division's discovery requests could be used

---

[1] The Division denies that it ever threatened criminal prosecution, and asserts that it only answered the question posed by Mr. Debyah's counsel in a manner consistent with Wyo. Stat. Ann. § 27-14-510(a), which subjects a person to criminal prosecution for misrepresenting information when applying for worker's compensation benefits.

[2]       (a)   Any person who knowingly makes, authorizes or permits any misrepresentation or false statement to be made for the purpose of him or another person receiving payment of any kind under this act is guilty of:
              (i)   A misdemeanor punishable by a fine of not more than seven hundred fifty dollars ($750.00), imprisonment for not more than six (6) months, or both, if the value of the payment is less than five hundred dollars ($500.00);
              (ii)   A felony punishable by a fine of not more than ten thousand dollars ($10,000.00), imprisonment for not more than ten (10) years, or both, if the value of the payment is five hundred dollars or more.

in a later criminal prosecution. *Kastigar*, 406 U.S. at 445, 92 S.Ct. at 1656. Thus, Mr. Debyah properly invoked his Fifth Amendment privilege.

**B. Did the hearing officer abuse his discretion by acting arbitrarily and capriciously in dismissing the case as a Rule 37 sanction?**

[¶15]  This is not the end of our inquiry, however.  An adjudicating body has the power to dismiss a case pursuant to Rule 37 even in the face of a litigant's proper assertion of the privilege.  *Serafino v. Hasbro, Inc.*, 82 F.3d 515, 519 (1st Cir. 1996); *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1087 n.6 (5th Cir. 1979); *Lyons v. Johnson*, 415 F.2d 540, 542 (9th Cir. 1969); *Mount Vernon Sav. & Loan Ass'n v. Partridge Assocs.*, 679 F.Supp. 522, 529 (D. Md. 1987); *Stop & Shop Cos. v. Interstate Cigar Co.*, 110 F.R.D. 105, 108 (D. Mass. 1986); *Jones v. B.C. Christopher & Co.*, 466 F.Supp. 213, 227 (D. Kan. 1979); *Penn Commc'ns Specialties, Inc. v. Hess*, 65 F.R.D. 510, 512 (E.D. Pa. 1975); *Wansong v. Wansong*, 478 N.E.2d 1270, 1272-73 (Mass. 1985).  While the Fifth Amendment "guarantees . . . the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will and to suffer ***no penalty*** . . . for such silence," dismissal of an action in the form of a discovery sanction is not considered a penalty, but is instead seen as a remedy to prevent unfairness. *Spevack v. Klein*, 385 U.S. 511, 514, 87 S.Ct. 625, 627, 17 L.Ed.2d 574 (1967) (emphasis added); *see also Wehling*, 608 F.2d at 1087; 1 *McCormick on Evidence* § 136, at 772 (Kenneth S. Broun ed., 7th ed. 2013) (Discovery sanctions in the face of a valid Fifth Amendment assertion "should not be to sanction the party who invoked the privilege but rather to provide a remedy for the party disadvantaged by his opponent's reliance upon the privilege.").  As the First Circuit noted:

> We think that in the civil context, where, systematically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding.  In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, . . . it also must ensure that the opposing party is not unduly disadvantaged.

*Serafino*, 82 F.3d at 518.  Thus an adjudicative body must balance the right of a litigant to assert the privilege against any unfair disadvantage that such an assertion may cause to the opposing party. *Id.*; *Wehling*, 608 F.2d at 1087.

[¶16]  We first look to statutory language and legal precedent to determine the evidence needed by the Division to present its case to the hearing examiner. Wyo. Stat. Ann. § 27-14-405(h) (LexisNexis 2015) provides that when a person applies for permanent partial disability benefits, the award of benefits is contingent upon: (1) the injured employee's inability to return to employment at a wage that is at least 95% of the monthly gross

7

earnings the employee was earning at the time of the injury; and (2) the injured employee's efforts to actively seek suitable work, considering the employee's health, education, training, and experience. This Court has also set out a non-determinative list of factors relevant to the earning capacity inquiry: "the employee's physical impairment, including the nature and extent of his injury; age; education; actual earnings, including pre-injury and post-injury earnings; ability to continue pre-injury employment; and post-injury employment prospects." *Bonsell v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 114, ¶ 12, 142 P.3d 686, 689 (Wyo. 2006).

[¶17] The Division argues that the discovery was relevant to the issue of whether Mr. Debyah could return to employment at a wage that was at least 95% of the monthly gross earnings he was earning at the time of the injury. According to the Division, because it sought "relevant information concerning the statutory requirements and *Bonsell* factors, the hearing examiner properly compelled answers." Though not finding that the Division was unfairly disadvantaged by Mr. Debyah's invocation of his Fifth Amendment privilege, the hearing examiner determined that the discovery was "relevant [and] important in deciding [Mr. Debyah's] entitlement to PPD benefits." Relevance, however, is not the only consideration when determining whether to compel discovery in the face of a valid Fifth Amendment assertion. The adjudicator must balance the right of a party to assert the privilege against any unfairness that may cause to the opposing party. Though the discovery sought does appear to be relevant, the hearing examiner did not perform this balancing in concluding that the case must be dismissed as a discovery sanction. Thus, the hearing examiner failed to weigh the relevant factors and as a result, abused his discretion by acting arbitrarily and capriciously. *See Waggener*, 946 P.2d at 813. We next consider whether the Division was so unfairly disadvantaged as a result of Mr. Debyah's invocation of the privilege that dismissal as a discovery sanction was inevitable. *Serafino*, 82 F.3d at 518.

[¶18] The Division argues Mr. Debyah's assertion of the privilege hampered its ability to prepare for the hearing, specifically contending that the requests went directly toward "proving or disproving whether or not Debyah could make 95% of his pre-injury wage." Mr. Debyah contends that the Division's investigation yielded all of the information the Division needed to defend its decision in the contested case hearing, and that it was not unfairly disadvantaged. The record does not contain sufficient information for this Court to determine whether the Division would have been unfairly disadvantaged at the contested case hearing without the information it sought through discovery.

[¶19] The record reveals that the Division gathered some information concerning Mr. Debyah's income post-injury through its investigation. While this information seems incomplete and somewhat speculative, it may still be sufficient to resolve whether Mr. Debyah is or is not able to return to employment at a wage that is at least 95% of his monthly gross earnings prior to the time of the injury. However, this Court cannot make that determination for a number of reasons. First, the record is devoid of any information

concerning Mr. Debyah's monthly gross income prior to his injury. As a result, we have no way to compare his earning capacity before and after the injury, to determine whether the Division was prejudiced by its inability to obtain complete discovery responses. Additionally, information pertaining to a number of *Bonsell* factors is absent from the record, including: Mr. Debyah's physical impairment, including the nature and extent of his injury; Mr. Debyah's age; and Mr. Debyah's education. This Court, "sitting . . . in its customary role as an appellate court, is not the proper forum in which to develop facts," *Gifford v. Casper Neon Sign Co., Inc.*, 618 P.2d 547, 551 (Wyo. 1980), and "does not act as fact finder." *Wood v. Wood*, 865 P.2d 616, 617 (Wyo. 1993). Our role is thus limited, and we must remand to allow the hearing examiner to develop additional facts as needed and determine the weight to be given to each of the *Bonsell* factors. *See Bonsell*, 2006 WY 114, ¶ 12, 142 P.3d at 689 ("Wages earned by the employee [are] material to the question of the employee's earning capacity and [are] entitled to whatever weight the fact finder gives to it." (quoting *McCarty v. Bear Creek Uranium Co.*, 694 P.2d 93, 95 (Wyo. 1985)). The hearing examiner must resolve whether, considering the weight to be given to each *Bonsell* factor, the Division was, or will be, unfairly disadvantaged by Mr. Debyah's assertion of the Fifth Amendment.

[¶20] If the hearing examiner determines that the Division was, or will be, unfairly disadvantaged, he must then balance Mr. Debyah's right to assert his Fifth Amendment privilege against any unfair disadvantage such an assertion has on the Division. The weight to be given a civil litigant's assertion of his Fifth Amendment privilege varies.

> Arguably courts should be particularly willing to impose vigorous penalties such as dismissal where a civil plaintiff invokes the privilege, and thus uses the privilege's shield as a sword to force an unfair advantage. Fundamental notions of fairness are violated if a party comes into court seeking relief from another and then relies upon his privilege to conceal information that might defeat his claim. A civil litigant's involuntary involvement in a lawsuit, in contrast, suggests that in fashioning a remedy for the litigant's invocation of the privilege more weight be given to that litigant's self-incrimination interests.

1 *McCormick on Evidence*, *supra*, § 136, at 773-74. However, even though Mr. Debyah's Fifth Amendment assertion may be entitled to less weight than if he were a defendant in the action, the balance must still be weighted to safeguard the Fifth Amendment privilege if possible. *Serafino*, 82 F.3d at 518. "[T]he Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no less burdensome effective means of obtaining it." *Id.* (citing *Black Panther Party v. Smith*, 661 F.2d 1243, 1272 (D.C. Cir. 1981)). Moreover, the adjudicator must impose a discovery sanction no more burdensome than that required to

remedy the prejudice suffered by the disadvantaged party. 1 *McCormick on Evidence*, *supra*, § 136, at 773. In other words, the hearing examiner must consider three things before he determines that dismissal is appropriate as a discovery sanction despite Mr. Debyah's valid assertion of his privilege: (1) whether the Division has a substantial need for the information sought; (2) whether the Division has an alternative means of obtaining the information; and (3) whether there are less burdensome alternatives to dismissal that would remedy any unfair disadvantage experienced by the Division. *Steiner v. Minnesota Life Ins. Co.*, 85 P.3d 135, 141 (Colo. 2004); *Serafino*, 82 F.3d at 518-19. If the Division does not have a substantial need for the information, or if the Division has an alternative means of obtaining the information, or if there is a less burdensome alternative to dismissal that would remedy any unfair disadvantage experienced by the Division, then dismissal is unwarranted. However, the required balancing may reveal that the only method of ensuring that the Division is not unfairly disadvantaged in the proceedings is through dismissal. *See Serafino*, 82 F.3d at 518 ("After balancing the conflicting interests, dismissal may be the only viable alternative."). After engaging in the proper balancing of conflicting interests, the decision of whether dismissal is warranted as a discovery sanction is within the sound discretion of the hearing examiner. We therefore remand with instructions to the hearing examiner to balance the right of Mr. Debyah to invoke his Fifth Amendment privilege against any unfair disadvantage to the Division.

## *CONCLUSION*

[¶21] Mr. Debyah reasonably believed that his answers to the discovery requests served by the Division could be used in a criminal prosecution against him and was therefore justified in asserting his Fifth Amendment privilege against self-incrimination. The hearing examiner abused his discretion by acting arbitrarily and capriciously when he compelled Mr. Debyah to answer the discovery and then dismissed the case without engaging in the proper balancing of Mr. Debyah's and the Division's conflicting interests. We therefore reverse and remand for further proceedings consistent with this opinion.